## 𝔖taunton

### Ruth S. Hopkins, Et Al. v. Harry J. O'Meara, Et Al.

September 14, 1955.

Record No. 4403.

Present, All the Justices.

The opinion states the case.

*Wilbur C. Hall* and *Alexander & Kelly*, for the plaintiffs in error.

*Stirling M. Harrison* and *Howard W. Vesey*, for the defendants in error.

Buchanan, J., delivered the opinion of the court.

This is an appeal from an order of the circuit court reversing the Board of Zoning Appeals for Loudoun county and holding that the appellee O'Meara was entitled to the Use Permit applied for under the Zoning Ordinance of the county.

O'Meara owns a tract of about 422 acres situated some seven miles east of the town of Leesburg, in Loudoun county. It fronts on the south side of State Route No. 7 for more than a mile and Route 607 runs through it north and south. A strip of this frontage 200 feet wide measured from the center of Route 7 is zoned as H-1, "Highway Agricultural," and all south of that strip is within a Rural District zone.*

On May 4, 1954, O'Meara applied for and was granted by the zoning administrator, under the terms of the Zoning Ordinance, a Zoning Permit covering a strip of land 560 feet long and 200 feet wide along the south side of Route 7 in the Agricultural District for use as a golf driving range to be equipped with mats for tees and a small golf shop. His right to that Zoning Permit is not denied.

On the same date O'Meara applied to the Board of Zoning Appeals for a Use Permit to cover a parcel of about four acres of his land in the Rural District lying along the south side of the driving range, "to permit the erection and extension of a golf range," the use contemplated being to allow golf balls driven from the driving range to fall and be picked up on the four-acre tract. This four-acre tract is surrounded on all four sides by land belonging to O'Meara.

At a meeting of the Board of Zoning Appeals held on May 26, 1954, attended by three of the five members of the Board, a hearing

---

* Section IV of the Zoning Ordinance, with respect to Rural Districts, provides:

"All uses not otherwise prohibited by law shall be permitted, provided, however, that no establishment in an R District shall display more than three signs totaling more than 40 feet in aggregate area, and provided, further, that none of the following uses shall hereafter be established in any R District unless and until a Use Permit therefor shall have been obtained from the Board of Zoning Appeals as provided in Section XIII-D of this ordinance:
* * *

"5. Commercial recreation uses, such as (but not limited to) bowling alleys, pool rooms, dance halls or any use in which facilities for recreation or amusement are provided for compensation."
* * *

Section XIII-D of the ordinance provides that the Board of Zoning Appeals may grant or deny the application for a Use Permit "as the Board sees fit, being guided in its decision by its opinion as to whether or not the proposed use would be desirable or advantageous to the neighborhood or the community or the county at large."

was had on the application for the Use Permit and by a vote of two to one the Use Permit was refused. O'Meara thereupon and pursuant to § 15-850 of the Code, as amended by Acts 1950, ch. 135, p. 176, applied to the circuit court for an appeal from the decision of the Board. The appeal was allowed and the Board was ordered to review its decision and make return thereof. Following the review two members of the Board voted to affirm the decision of May 26 and refuse the permit, two members voted to grant it and one declined to vote.

On appeal to the court the present appellants were allowed to intervene, it was stipulated by all parties that there was no additional evidence to be taken, and the case was submitted to the court for determination on the pleadings and the record of the Board of Zoning Appeals. After hearing argument and "upon a consideration of the findings of the Board of Zoning Appeals * * and the evidence of record," the court found that O'Meara was entitled to the Use Permit applied for, the decision of the Board was reversed and the Use Permit was granted.

Under their assignments of error to that holding the appellants argue that the court erred in overruling the decision of the Board without finding as a fact that the decision was arbitrary, capricious, oppressive, unwarranted or illegal; and that the record before the court was not sufficient to afford a basis for any reasonable or lawful decision.

Section 15-850 of the Code, as amended, provides that when an appeal is allowed and a review ordered, the Board shall return certified or sworn copies of such parts of the original papers as may be called for, and shall concisely set forth such other facts as may be pertinent and material to show the grounds of the decision appealed from. On the hearing, if it appears necessary, the court may take evidence or appoint a referee to do so, who shall report his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may then "reverse or affirm, wholly, or partly, or may modify the decision brought up for review."

Appeal provisions in practically identical language were under review (on a writ of certiorari) in *People v. Connell*, 257 N. Y. 73, 177 N. E. 313. The Court of Appeals held that where additional testimony is taken and the case comes to be decided upon the new testimony and the old, the trial court even then should not put itself in the position of the board, nor substitute its own discretion

for that of the administrative agency in a situation where the exercise of discretion is possible; that the judgment of the board of appeals should be final unless it clearly appears to be arbitrary or contrary to the law. However, it was held that on the facts and circumstances of the case the ruling of the board refusing to allow a variance so as to permit the erection of a gasoline station deprived the owner of any beneficial use of his property, and the order of the board was modified and the permit granted with conditions.

In *Anderson* v. *Jester*, 206 Iowa 452, 221 N. W. 354, the statute involved provided that upon the filing of a petition specifying grounds of illegality the trial court could allow a writ of certiorari and the hearing should be *de novo*, whereupon the method of procedure and decision was the same as provided in the Virginia statute. The court said that any arbitrary or unreasonable action, contrary to the terms or spirit of the zoning law, or contrary to or unsupported by facts, was an illegal action; but if on the facts the reasonableness of the board's action was open to fair difference of opinion, then there would be as to that no illegality.

See also *State* v. *Kansas City*, 325 Mo. 95, 27 S. W. (2d) 1030; *In Re Jennings' Estate*, 330 Pa. 154, 198 A. 621; *Pieretti* v. *Johnson*, 132 N. J. L. 576, 41 A. (2d) 896.

The case of *Burkhardt* v. *Board of Zoning Appeals*, 192 Va. 606, 613, 66 S. E. (2d) 565, 569, involved a review under a section of the charter of the city of Richmond which provided that "Unless it is made to appear that the decision is contrary to law or is arbitrary and constitutes an abuse of discretion the court shall affirm the decision."

We hold that on an appeal to the circuit court under § 15-850, as amended, there is a prima facie presumption that the power and discretion of the Board of Zoning Appeals have been properly exercised, and it must appear from the record transmitted to the court, together with any additional evidence taken and procedure had under the statute, that the decision of the Board is plainly wrong before it may be disturbed by the court. *Cherrydale &c. Co.* v. *County Board*, 180 Va. 443, 447, 23 S. E. (2d) 158, 160; Annotation, 168 A. L. R. 123, 146.

The evidence of record referred to in the circuit court's order is that which appears in the minutes of the May 26 meeting of the Board of Zoning Appeals. This consisted of letters to the

Board from persons "in protest against a Golf driving range;" a letter of protest against a golf driving range from the Loudoun County Planning Commission; a paper "against said Use" signed by fifteen taxpayers; and the statements of persons present at the meeting to the effect that there was no need for a golf driving range; that it would be a nuisance, a traffic hazard and detrimental to the best interests of the community and county.

O'Meara stated that there would be six hooded lights on approximately 30-foot poles shining away from the highway and that the driving range would be open during the day and also at night; that the entire frontage of the range to the depth of 70 feet, together with an additional 100-acre tract if necessary, would be available for parking. A petition signed by ninety-nine residents of the county was presented in favor of granting the permit.

In the report made after the review ordered by the court, the two members of the Board who voted to deny the Use Permit stated that they reached their decision that the proposed use was not desirable or advantageous to the neighborhood or community in view of the protests against it; but they further stated that O'Meara admitted that he could not operate the golf driving range for which he held a Zoning Permit without using the land embraced in his application for a Use Permit; and that "these members were of the opinion that they should not, by granting the 'Use' permit in question, thus enable applicant to establish such a commercial project, with its probable traffic hazard, in what is now, and the landowners thereabout desire to preserve and maintain, an attractive rural area, * *."

It thus clearly appears from the record before the trial court on the appeal that the objections made to the Board were not to the Use Permit allowing golf balls to fall and be picked up on O'Meara's own land, but were objections to operating the driving range itself, for which O'Meara had previously been granted and then held a Zoning Permit duly issued pursuant to the Zoning Ordinance adopted by the Board of Supervisors.

It is equally clear that the Board of Zoning Appeals refused the Use Permit not on the basis of "whether or not the proposed use would be desirable or advantageous to the neighborhood or the community or the county at large," but refused it in order to prevent O'Meara from exercising the privilege held by him under his Zoning Permit of operating the golf driving range. The Board thus

undertook to do indirectly what it lacked authority to do directly; *i.e.*, to take away from O'Meara the benefit of a permit previously issued to him according to the terms of the Zoning Ordinance. The action of the Board in refusing to grant the Use Permit was therefore without warrant in law and was consequently illegal and plainly wrong.

O'Meara argues that the use of his Rural District land for which the permit was applied for was permitted by the terms of section IV of the Zoning Ordinance and, further, that section XIII-D-3 (note, *supra*) is unconstitutional because it provides no legislative standard of decision. In view of our conclusion on the merits it is unnecessary to deal with those questions.

The order of the circuit court reversing the decision of the Board of Zoning Appeals and granting to the applicant the Use Permit applied for is therefore

*Affirmed.*