# Staunton

## Wicker Apartments, Incorporated v. City of Richmond.

September 6, 1957.

Record No. 4705.

Present, Eggleston, Spratley, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*John W. Keith, Jr. (David C. Rice; M. Wallace Moncure, Jr.; Rice, Schaffer & Keith; Moncure & Cabell, on brief), for the appellant.*

*J. Elliott Drinard, City Attorney (C. B. Mattox, Jr., Assistant City Attorney, on brief), for the appellee.*

WHITTLE, J., delivered the opinion of the court.

A decision of the Board of Zoning Appeals of the City of Richmond was appealed to the trial court by Wicker Apartments, Incorporated. The decision approved, over the objection of Wicker Apartments, the right of the City of Richmond to a permit under section 17.20(c) of its charter to construct a Juvenile Detention Home upon land owned by the city, allegedly contrary to the zoning regulations to which the city was subject.

The case was tried in the court below without a jury, upon the "certificate of records and documents" certified by the board to the court upon a writ of *certiorari* and upon agreed stipulations. No oral testimony was considered or offered. From the court's order affirming the decision we granted Wicker Apartments an appeal.

The present charter of the city was enacted at the 1948 session of the General Assembly of Virginia (Acts of Assembly, 1948, Chapter 116, pp. 175-275).

Chapter 17 of the charter, with which we are here concerned, deals with "Planning, Zoning and Subdivision Control", and is recorded in the 1948 Acts of Assembly, pp. 246-261, and embraces charter sections 17.01 through 17.36.

As provided in section 17.01 of the charter, the council of the city adopted by ordinance a master plan for the physical development of the city. At the time of the adoption of the plan the city owned considerable acreage in the district involved, known as "The Pine Camp Tract", which district, under the plan, was zoned as "A-Single-Family Dwelling District".

The case developed as follows: The Director of the Department of Public Works of the city applied to the Commissioner of Buildings for a building permit to construct a juvenile detention home on the property owned by the city located in this district and being situate on the northeast corner of the intersection of Forest Lawn road and Old Brook road. The application stated that the home would be constructed 58 feet from Forest Lawn road and 138 feet from Old Brook road.

The Commissioner of Buildings, on June 6, 1956, denied the permit as requested on the ground that the proposed site was zoned " 'A'-Single-Family Dwelling District", and that the proposed use violated the zoning ordinance in that such use was not permitted.

The Director of the Department of Public Works, on June 8, 1956, appealed the decision of the Commissioner of Buildings to the Board of Zoning Appeals, pursuant to section 17.19 of the charter which provides that an appeal to the board may be taken by any person aggrieved or by any officer, department, board, commission or agency of the city affected by any decision of an administrative officer.

The Board of Zoning Appeals, pursuant to section 17.20(a), heard the matter on June 18, 1956, and found that "the applicant (city) failed to demonstrate that it was reasonably necessary in the public interest that the site proposed in the application be used", and refused the application.

Whereupon, the Director of the Department of Public Works, pursuant to section 17.21, petitioned the Board of Zoning Appeals for a rehearing. This section provides: "* * * The Board may, upon the affirmative vote of three (of its five) members, reconsider any decision made and, upon such reconsideration render a decision by a formal resolution * * *."

The rehearing was granted on June 20, 1956, and was held on July 2, 1956, whereupon, on sworn testimony introduced before the board it was found "* * * that it is reasonably necessary in the public interest to locate the detention home on the parcel of land described in the application (the northeast corner of the intersection of Forest Lawn road and Old Brook road)." The board then found from the evidence presented that the proposed home and use of the property would not unreasonably impair an adequate supply of air and light to the adjacent property, would not increase public danger from fire or otherwise affect public safety. The board denied the permit as

requested because adequate safeguards necessary for the protection and welfare of the occupants of the adjoining and surrounding property had not been provided. The permit was granted, however, under certain conditions which were designed, in the opinion of the board, to adequately safeguard the welfare of the occupants of the adjacent and surrounding property. These were (1) that the building and play area be set back a minimum of 440 feet from the closest point on the eastern line of Old Brook road; (2) that a double fence be constructed around the play area, with a minimum of 20 feet between such double fences.

An order was entered granting the permit upon the enumerated conditions being met. From this order appellant, Wicker Apartments, without requesting a rehearing on the effect of the construction on the newly approved site as authorized by section 17.21, appealed to the Law and Equity Court of the City of Richmond. Section 15-825, Code of Virginia, 1950, as amended.

The city, in support of its application for the permit, presented to the board several lengthy reports dealing with many aspects of the location of detention homes. One was a report of the committee of the City Planning Commission which was prepared by the committee and Sherwood Norman, field representative of the National Probation and Parole Association, a recognized authority in the field of detention homes. This elaborate report catalogued the desirable requirements of a detention home and stated that the Pine Camp property would provide a proper location for the home in that it offered adequate space for the rehabilitation of children coming within the jurisdiction of the Juvenile and Domestic Relations Court. The report considered the proximity of the site to public transportation, its distance from other dwellings, and its effect upon the neighborhood and the residents thereof.

Another report submitted was one compiled by a committee appointed by the City Planning Commission to consider the location of public buildings. This report recommended to the commission the Pine Camp site, stating that it fully met the needs as set forth in the report above referred to. The report further stated that thirty-four cities in the United States had recently constructed detention homes in areas comparable to the one here under consideration.

There were two other reports submitted, one by the City Planning Commission addressed to the City Manager, setting forth the studies made by it and recommending that the detention home be located on

the 5-acre plot on the Pine Camp tract adjacent to Old Brook road. Another was a report to the City Council by the City Manager, indicating that after careful evaluation of the reports, and after his individual study, he recommended to council that the home be located on the Pine Camp site.

All of these documents were certified to the trial court by the Board of Zoning Appeals.

Upon the hearing of the appeal by the trial court, in addition to the reports aforesaid, the following was stipulated by counsel on behalf of Wicker Apartments and the City:

That the findings and conclusions of the Board of Zoning Appeals to the effect that the location of the detention home on the property in question "will not unreasonably impair an adequate supply of light and air to adjacent property, will not increase congestion in streets, and will not increase public danger from fire" are not in issue upon this appeal.

It was stipulated on behalf of Wicker Apartments that counsel for the city, in his opening statement to the Board of Zoning Appeals, read to the board section 17.20(c) of the charter and referred the board to the provisions of section 17.20(d) thereof (which deals with applications of individuals for a variance), pointing out that the phrase "shall not diminish or impair the established property values in surrounding areas" appears in section 17.20(d) but does not appear in section 17.20(c), the section under which the board was empowered to grant the permit for the use of the property for a detention home, and argued to the board that the diminution in property values was not an element that the board could consider in deciding whether a permit should or should not be granted; that counsel for petitioner (Wicker Apartments) took issue with such argument and argued that the diminution in property values was an element to be considered, and counsel for Wicker Apartments presented as evidence 155 cards, signed by persons purporting to be owners and occupants of property surrounding the proposed detention home site, which cards contained the statement: "I am opposed to the detention home being located on the Pine Camp site because it will adversely affect property values and create an undesirable influence on the children in the area"; that counsel for the city objected to the admission of such cards in evidence as they related to the diminution of property values which he contended was not an element that the board could consider under section 17.20(c) which

deals only with applications for variance for public use.

It was further stipulated that the Regional Director of the Federal Housing Administration testified that his agency had a number of insured loans in the area which, in his opinion, would be jeopardized by the proposed use, and that if the detention home were permitted to be erected on the site the agency, in his opinion, would not in the future insure any loans in an area within two or three blocks of the site. This evidence was objected to by the city for the reasons heretofore and hereafter stated.

It was stipulated that other evidence had been introduced before the board to show that Wicker Apartments [situated on the opposite side of Old Brook road] would suffer a substantial depreciation in value within a period of three years after the erection of the home, and that other property values in the vicinity would be greatly depreciated.

Counsel for the city objected and excepted in the trial court to the evidence regarding the depreciation in property values and assigned the following reasons: "That the permit issued by the Board of Zoning Appeals was issued pursuant to the power conferred on the board by section 17.20(c) of the charter of the city, which provides that the board shall have the power, and it shall be its duty to permit, when reasonably necessary in the public interest, the use of land, or the construction or use of buildings or structures, in any district in which they are prohibited by the zoning ordinance by any agency of the city provided certain conditions and circumstances are found by the board to exist. The fact that the diminution in the value of property may or may not result from a permitted use is not a factor that the board could or might consider in permitting such use of property by the city, as is the case when the board exercises the power granted in section 17.20(d) of the charter."

The city also argued before the trial court that the Board of Zoning Appeals found that it was reasonably necessary in the public interest to locate the detention home on the parcel of land described but denied the application to erect the home on the site selected by the officials of the city, that is, 138 feet more or less from the closest point on the eastern line of Old Brook road, which is the proposed site referred to in the stipulated evidence, on the ground that the welfare and safety of the occupants of the adjoining and surrounding property were not adequately safeguarded; that the permit granted

by the Board of Zoning Appeals was a permit to erect the home on another site 440 feet from the closest point on the eastern line of Old Brook road, upon the conditions enumerated; that the cards presented were inadmissible under the best evidence rule but irrespective of such inadmissibility the board had demonstrated that it gave due consideration to the welfare of such owners or occupants of the adjoining and surrounding property by rejecting the site applied for and issuing the permit for another site a material distance from the site first selected.

Involved on this appeal is the construction of section 17.20(c) of the charter. The charter, passed as aforesaid by the General Assembly of Virginia, undoubtedly grants to the Board of Zoning Appeals of the City of Richmond special authority which is not usually embraced in city charters or in zoning ordinances. The section reads:

"Section 17.20. Powers of Board of Zoning Appeals.—

"The board shall have the following powers and it shall be its duty:

\*      \*      \*      \*      \*      \*      \*

"(c) To permit, when reasonably necessary in the public interest, the use of land, or the construction or use of buildings or structures, in any district in which they are prohibited by the ordinance, by any agency of the city, county or state or the United States, provided such construction or use shall adequately safeguard the health, safety and welfare of the occupants of the adjoining and surrounding property, shall not unreasonably impair an adequate supply of light and air to adjacent property, shall not increase congestion in streets and shall not increase public danger from fire or otherwise affect public safety."

Acting under the provisions of this section, as related to the site ultimately approved, the Board of Zoning Appeals found that the conditions of the section had been met.

Under § 15-825, Code of Virginia, 1950, as amended in Chapter 688, Acts of Assembly 1952, page 1131, the trial court, as was its duty, heard the case *de novo*.[1] On appeal, the burden was on Wicker

---

[1] Code, § 15-825, as amended, supersedes or repeals by implication § 17.24 of the city charter. (Acts 1948, ch. 116, p. 257).

Apartments to show to the satisfaction of the court that the permit granted by the board was contrary to law.

While there are several errors assigned by Wicker Apartments it concedes in its reply brief that "Point I is the real issue in the case." Point I, as stated, follows:

"The board, sitting as a board of special and limited jurisdiction with solely the powers contained in section 17.20 of the city charter, unlawfully exceeded its power and jurisdiction by exercising the legislative function of zoning * * * in contravention of the terms and spirit of said section when it granted a variance to the City of Richmond to erect a Juvenile Detention Home on land zoned 'A-Residentrial,' which land the city owned at the time of such zoning and to which zoning regulations the city, like all its citizens, is subject."

It is here contended that the Board of Zoning Appeals is a *quasi*-judicial body and while acting as such has no right to usurp legislative functions and vary or rezone property; that its function goes no further than the granting of relief from inequities "resulting from the necessary generalities of zoning—in other words, its function is merely to 'smooth out the rough edges' of the zoning ordinance as adopted by the council as the legislative branch;" that it is vested only with the powers contained in section 17.20 of the charter.

Ordinarily the function of zoning and rezoning, as contended by Wicker Apartments, is a legislative function vested solely in the council of a city which is directly "responsible to the people". But as heretofore indicated, we are dealing with an unusual provision in this charter (§ 17.20(c)) which grants to the Board of Zoning Appeals of the City of Richmond enlarged powers, and there is reason for the enactment which serves to meet an assault upon its constitutionality.

Section 17.20(c) deals only with and is limited to "the use of land, or the construction or use of buildings or structures * * * of the city, county or State or the United States, * * *", as contrasted with property of individual citizens. In this instance the City of Richmond owns the property and is seeking the variance. The council is a legislative body which concededly has the power to zone or rezone property, and as such, as contended, is "responsible to the people". In the final analysis, any error of judgment on council's part, political or otherwise, while acting in either an administrative or legislative capacity, in this instance falls upon it.

However, the assertion by appellant in Point I, *supra*, that the board exceeded its authority "by exercising the legislative function of zoning" is without merit. In granting the requested variance the board was only exercising the authority and performing the duty given by section 17.20(c) which has been duly enacted by the General Assembly (Acts, 1948, chapter 116, *supra*). This legislation (enacted by the legislature—not the board) provides that it "shall be the duty" of the board (if the conditions of the section are met) to permit "* * * the use of land, or the construction or use of buildings or structures, in any district in which they are prohibited by the ordinance * * *," when such variance is sought by governmental authority.

It is not seriously contended that the conditions and restrictions imposed in section 17.20(c) have not been established either by agreed stipulation or proof. The board found that there was credible evidence tending to establish all conditions and restrictions not covered by the stipulation such as that the establishment of the home is reasonably necessary in the public interest and that "such construction or use shall adequately safeguard the health, safety and welfare of the occupants of the adjoining and surrounding property * * *." That finding is not controverted.

Section 17.20(c) has no provision regarding the diminution of property values such as is embraced in section 17.20(d) to the effect that the variance "* * * shall not diminish or impair the established property values in surrounding areas", therefore the question of such diminution in values was not for the board's consideration.

It will be remembered that the stipulated evidence related to the site selected by the city 138 feet more or less from the closest point on the eastern line of Old Brook road. The board, in its discretion, rejected this site on the ground that the welfare and safety of the occupants of the adjoining and surrounding property, which included Wicker Apartments, were not adequately safeguarded. The site approved by the board was 440 feet from the closest point on the eastern line of Old Brook road. No rehearing on this site was requested (§ 17.21), and there was no proof offered before the board or on the *de novo* trial before the court showing the effect on the occupants of the adjoining and surrounding property in connection with the approved site.

■ The decision of the trial court is presumed to be correct. 1 Mich. Jur., Appeal and Error, §§ 258, 259, pp. 675-677.

The appellant has not borne the burden of showing that the permit as finally granted by the board was contrary to law, and the order is therefore

*Affirmed.*