# Richmond

## Board of Zoning Appeals of Town of Abingdon, Virginia v. Florence V. Combs.

January 26, 1959.

Record No. 4861.

Present, All the Justices.

The opinion states the case.

*G. R. C. Stuart*, for the appellant.

*Fred C. Parks* and *H. E. Widener, Jr. (Widener & Widener*, on brief), for the appellee.

MILLER, J., delivered the opinion of the court.

Florence V. Combs, hereinafter called petitioner, is the owner of a rectangular lot of land on the northeast corner of Main and Deadmore streets in the town of Abingdon, Virginia. The lot fronts 60 feet on Main street, which runs in an easterly and westerly direction, and extends back northwardly along Deadmore street 170 feet to Plum alley, a cul-de-sac, which extends eastwardly 60 feet from Deadmore street and terminates at or near the northeast corner of the lot.

This lot of 10,200 square feet is situate in what is designated in the zoning ordinances of the town as a General Business District. Article III, §§ 17-8 and 17-5 (e) of the ordinances require a minimum lot size of 6,000 square feet for a secondary dwelling. In a general business district the minimum set back from the street required by the zoning ordinances for each dwelling is 25 feet.

When this controversy arose more than nine years ago, there were three buildings upon the lot; all of them still remain as then located. A combination residence and grocery store occupied by petitioner's family fronts on Main street and extends back 40 to 45 feet; a one-story, two-car garage, 20 by 24 feet, is located at the northwest corner of the lot with a set back of about 16 feet from Deadmore street and 6 or 7 feet from Plum alley, and a coal house 10 by 12 feet is on the northeast corner of the lot.

On November 29, 1949, petitioner applied to the building inspector of the town for a permit to construct over the garage a second story residential apartment of four rooms with outside entrance and stairway. This contemplated structure, with egress and ingress to and from Deadmore street, constituted a secondary dwelling under the zoning ordinances and would have the same set back from Deadmore street as the garage over which it was to be constructed. Petitioner's application was denied upon the grounds of (a) insufficient space, and (b) insufficient set back distance.

Petitioner appealed to the board of zoning appeals from the inspector's denial of the building permit. The powers of the board under §§ 7.241, 7.242, and 7.243 of the Town Charter, Acts 1950, ch. 425, p. 812, are similar to those bestowed on boards by § 15-831, Code 1950. At a hearing held on December 12, 1949, her husband S. T. Combs, who appeared for her before the board, expressed a desire to build the garage apartment if the board would permit that to be done. The board, however, sustained the inspector's denial of the permit on the grounds assigned by him, and Combs was advised of petitioner's right of appeal to the circuit court within thirty days.

Petitioner did not appeal but she continued to construct the apartment. The inspector observed the unauthorized construction while in progress and by letter of January 28, 1950, advised petitioner that erection of the apartment was in violation of the zoning ordinance. This warning went unheeded and the construction continued. Subsequently, a warrant was issued against petitioner for violation of the zoning ordinance to which she pleaded guilty, was convicted, and fined.

Although petitioner had partially constructed the apartment without legal authorization, yet on June 11, 1951, she made written application to the inspector for a certificate of occupancy of the apartment for residential purposes. This application was likewise denied by the inspector because of insufficient area and insufficient set back. Again, petitioner appealed to the board, and at a hearing held on July 9, 1951, the board refused to grant her a certificate of occupancy. The reasons stated for its denial were "that there is insufficient area and insufficient set backs and a permit to build the apartment over the garage had been denied the applicant, and the apartment having been constructed without a permit and in violation of the Board's ruling, the Board is of the opinion that it should not grant a Certificate of Occupancy for the apartment which it had denied the applicant the right to construct, because of insufficient area and insufficient set-backs."

Upon refusal of the certificate of occupancy, the board advised petitioner of her right of appeal to the circuit court, of which she availed herself but it was not until five years later that the matter was brought to a hearing before the court. During that time the unfinished apartment was used for storage.

At the trial on August 1, 1956, in addition to the record before the board, the court heard the testimony of S. T. Combs and received

in evidence two letters from neighbors of petitioner withdrawing objections to petitioner's application to build and occupy the apartment. Apparently in an attempt to prove that the board's decision was discriminatory and unreasonable, Combs testified with respect to the location and character of three other buildings in the town. He called attention to a house fronting on Plum alley at the edge of a street approximately half a mile from petitioner's lot, but he did not give the lot size, set back of that house, or state whether or not a permit had been obtained for its erection; nor did he state when it was built. He also described a garage which he said had been built "in the middle of Plum alley" northeastwardly from petitioner's garage, but where the alley was not open to the public. This building was not designed for a dwelling, and he failed to state the time of its construction, size of the lot, set back, or whether a permit had been obtained for its erection. He then testified that there was a garage on property across Deadmore street from petitioner's lot but it appears that it contained no dwelling unit and no details were given as to the lot area, set back, or time of construction. Lastly, he said that the cost of petitioner's apartment building would be around $2,500 to $3,000 and that $2,000 had been spent since its construction began.

Upon conclusion of the evidence the court reversed the decision of the board and decreed that petitioner was entitled to a certificate of occupancy.

█ It is conceded that the town council, acting under its charter and the authority of § 15-819, Code 1950, was empowered to enact and adopt a zoning ordinance and plan fixing the minimum lot sizes and set back requirements for building construction. It is also agreed that under §§ 7.23, 7.24, and 7.25 of the town charter, Acts 1950, ch. 425, p. 776 (the provisions of which are similar to those in § 15-831, Code 1950), the board is empowered to hear and decide appeals from the building inspector and to authorize in special cases variances from the zoning ordinances "not contrary to the public interest where owing to special conditions, a literal enforcement of the provisions of the ordinances will result in exceptional and peculiar hardship" so that the spirit of the ordinances "be observed and substantial justice done."

The power bestowed upon the board of zoning appeals to grant a variance from a literal enforcement of the ordinance where ex-

ceptional or peculiar hardship is imposed is in keeping with the power usually found in this character of legislation.

"For the purposes of providing flexibility in the application of zoning regulations, of relieving against practical difficulties or unnecessary hardships in the way of their strict enforcement, and of protecting zoning regulations against attack on the ground of unreasonable interference with private rights, most zoning statutes and ordinances grant boards of appeal, review, or adjustment authority to vary the application of provisions thereof, in accordance with general or specific rules therein contained, and subject to appropriate conditions and safeguards. Such a provision should be given a reasonable interpretation. The provision, however, is for relief from the application of zoning regulations; it should not be so interpreted as to empower a zoning board to broaden or extend the regulations imposed so as to prevent the use of particular premises for a purpose or structure not prohibited thereby." 58 Am. Jur., Zoning, § 196, p. 1046. 62 C. J. S., Municipal Corporations, § 227(10).

In the board's exercise of this authority to grant a variation from the zoning regulation as to a particular piece of property, each application must be determined upon the facts and circumstances presented and upon the merits of the case. To effect the purpose of the ordinance in this respect, the board of zoning appeals is clothed with discretionary power, yet its discretion may not be arbitrarily exercised. It must act intelligently, fairly, and within the realm of reason. 58 Am. Jur., Zoning, § 198; 62 C. J. S., Municipal Corporations, § 227(11); 168 A.L.R. 106.

 Upon application of these principles to the evidence before the board, it is abundantly clear that it was warranted in denying the application.

It is conceded by both litigants that § 15-825, having been reenacted by Acts 1952, ch. 688, p. 1131, supersedes the somewhat similar provision of the town charter found in §§ 7.26, 7.261, and 7.262, Acts 1950, ch. 425, p. 776.

This is pointed out for § 15-825 provides that upon appeal from the board's decision, the trial "shall be a trial de novo"[1], whereas no such provision is found in the town charter or in § 15-850. Yet it should be observed that when this amendment of § 15-825 was made in 1952, no specific legislation was enacted to repeal or amend §§ 15-

---

[1] This provision was incorporated into § 15-825 by Acts 1952, ch. 688, p. 1131.

835, 15-836, or 15-837, Code 1950, which contemplate a *review* of the board's decision and provide the procedure in that respect.

On appeal to the court under § 15-850, applicable to counties, we have held that "there is a prima facie presumption that the power and discretion of the Board of Zoning Appeals have been properly exercised," and its decision may not be disturbed unless it "appear from the record transmitted to the court, together with any additional evidence taken and procedure had under the statute, that the decision of the Board is plainly wrong * * *." *Hopkins, et al.* v. *O'Meara, et al.*, 197 Va. 202, 205, 89 S. E. 2d 1.

However, in the *Hopkins* case, in citing and referring to the decision in *Anderson* v. *Jester*, 206 Iowa 452, 221 N. W. 354, we said that the statute there involved "provided that upon the filing of a petition specifying grounds of illegality the trial court could allow a writ of certiorari and the hearing should be *de novo*, whereupon the method of procedure and decision was the same as provided in the Virginia statute. The court said that any arbitrary or unreasonable action, contrary to the terms or spirit of the zoning law, or contrary to or unsupported by facts, was an illegal action; but if on the facts the reasonableness of the board's action was open to fair difference of opinion, then there would be as to that no illegality." At page 205.

The case of *Burkhardt* v. *Board of Zoning Appeals*, 192 Va. 606, 66 S. E. 2d 565, was also cited in the *Hopkins* case, and it was pointed out that the Burkhardt decision involved a review under a section of the charter of the city of Richmond, which provided that "Unless it is made to appear that the decision is contrary to law or is arbitrary and constitutes an abuse of discretion the court shall affirm the decision." There the trial court, upon review of the Board's decision under that provision of the charter, found that the Board had acted neither contrary to law nor arbitrarily in abuse of its discretion, and we approved that rule of decision under the applicable charter provision.

On appeal under § 15-825, applicable to towns and cities, from the board's decision, we have held that the burden was upon the appellant to show to the satisfaction of the court that the action of the board was contrary to law. *Wicker Apartments* v. *City of Richmond*, 199 Va. 263, 99 S. E. 2d 656.

It was said in the *Wicker Apartments* case that the "trial court as was its duty, heard the case *de novo*." Yet it is apparent that the

decision in that case took into consideration the provisions of §§ 15-835, 15-836, and 15-837, and did not consider these sections to have been repealed by implication by the 1952 amendment of § 15-825. These sections provide for the trial court to consider the record made before the board and such other evidence as the court should deem necessary for the proper disposition of the matter, and reverse or affirm, in whole or in part, or "modify the decision brought up for *review*." Emphasis added. It is also significant that these provisions of §§ 15-835, 15-836, and 15-837, applicable to cities and towns, are also incorporated into § 15-850, which is applicable to counties. When, as here, the appeal is under § 15-825, and these three sections are taken into consideration, as they should be, it is evident that the trial before the court is not a *de novo* trial in the strict sense of the term but a trial wherein the court should give consideration to the fact that the board is empowered to exercise a reasonable discretion in determining whether or not a variance should be granted or denied.

It thus appears that whether or not the appeal is from the zoning board of a city or town under § 15-825 or from the zoning board of a county under § 15-850, the rule of decision to be applied by the court is in reality the same. In either case the decision of the board is presumed to be correct, and the court should not substitute its discretion for that of the board. 1 Yokley, *Zoning Law and Practice* (2d ed.), § 187, p. 480. The court may not disturb the board's decision unless it has applied erroneous principles of law or where the board's discretion is involved unless the evidence before the court proves to its satisfaction that the board's decision is plainly wrong and violative of the purpose and intent of the zoning ordinance.

By application of these principles we must determine whether or not the circuit court, on the record and evidence before it, was justified in reversing the action of the board and decreeing that petitioner was "entitled to use for residential purposes the second story, or second floor of" the private garage building.

Here the evidence discloses that if any hardship befell petitioner, it was self-imposed and due to her unreasonable continuation of the construction of the apartment after knowledge and warning of the likely consequences of her unlawful conduct.

"The board should also keep before it the established rule that self-inflicted hardship, deliberately or ignorantly incurred, affords no

basis for special treatment under zoning regulations." *Sherwood Realty Corp.* v. *Feriola,* 193 Misc. 194, 197, 82 N. Y. S. 2d 505. See 197 Misc. 77, 93 N. Y. S. 2d 750, and 277 App. Div. 1049 for subsequent proceedings in this case.

The additional evidence presented to the court in the testimony of S. T. Combs is of little moment. It fails to show that the board acted contrary to law, abused its discretion, or violated the purpose and intent of the zoning ordinance.

It necessarily follows that the order appealed from must be reversed, and the resolution and decision of the board denying petitioner a certificate of occupancy reinstated, confirmed and made effective.

*Reversed and final judgment.*