## Richmond

BOARD OF ZONING APPEALS OF THE CITY OF ALEXANDRIA, VIRGINIA, ET AL. v. TRUDYE H. FOWLER.

June 13, 1960.

Record No. 5102.

Present, Eggleston, C. J., and Spratley, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Eldridge K. Hayes* and *George M. Giammittorio,* for the appellants.

*Albert V. Bryan, Jr.,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

We granted the Board of Zoning Appeals (hereinafter called the Board) and the Alexandria Dairy Products Company, Incorporated (hereinafter called the Dairy) a writ of error to a judgment of the Corporation Court of the City of Alexandria in a proceeding wherein Trudye H. Fowler was petitioner and the Board and the Dairy were respondents.

. Mrs. Fowler filed her petition of appeal in the Corporation Court seeking relief from the action of the Board in granting a variance of building setback requirements which allegedly adversely affected her property. Answers were filed by the Board and the Dairy denying the allegations of the petition and praying that the action of the Board in granting the variance be affirmed.

The court, after a hearing, affirmed the decision of the Board wherein it had granted the Dairy a variance of $7\frac{1}{2}$ feet in a rear yard setback requirement of the general zoning ordinance, thus permitting the Dairy to construct a building up to its rear lot line. However, the court reversed the Board's decision wherein it had granted a variance of 5 feet in a side yard setback requirement. thus limiting the Dairy in the construction of its building to within 5 feet of its side lot line.

No exception was taken to the court's affirmance of the variance of $7\frac{1}{2}$ feet in the rear yard setback requirement but both the Board and the Dairy excepted to the court's ruling in reversing the Board and disallowing the variance of 5 feet in the side yard setback requirement; hence this appeal.

The record discloses that the Dairy is located in a block bounded by Queen, Pitt, St. Asaph and Princess streets. It has been at this location for approximately 30 years and in that time has grown and prospered. The block in which the Dairy is located is in that part of the City of Alexandria commonly referred to as "Old Town".

The evidence and the picture exhibits show that located in this block are frame houses in a rather dilapidated and substandard condition. There are houses on Queen Street of brick construction which appear to be well maintained and substantial. The map exhibits indicate that the block is poorly laid out, being a hodgepodge of lot lines and alley ways, containing landlocked lots, lots fronting

on an alley, and also containing lots measuring 7½ feet by 48 feet, and in one instance an alley 3 feet wide.

Mrs. Fowler owns the house and lot known as 511 Queen Street, which house is of brick construction and is an attractive and valuable property. She acquired the property in 1940, occupied it for some time and later moved to a home on Fairfax Street, leasing her Queen Street home. The Fowler lot extends back approximately 175 feet to an alley running east and west. This alley bisects the block. The assessment map shows that the Fowler property is in two parts, the first lot, upon which the house is located, is shown as Lot 16; the rear portion, which is unimproved, is designated as Lot 10C. The east side of Lot 10C abuts the west side of the Dairy's lot which is indicated on the map as Lot 10A. The line between Lots 10A and 10C is the focal point of the dispute here.

Lot 10A was acquired by the Dairy in 1947. It is unimproved and is zoned I-1, light industrial, as is the balance of the Dairy property. Lot 10C, belonging to Mrs. Fowler, is zoned R-M, which provides for residential use among other things, and sets up a flexible set of standards for yard areas and setback requirements.

The R-M zone building setback requirement for new construction is 5 feet from the side lot line. The required setback from the rear lot line is computed according to a ratio of 1:2, that is, one foot of setback for each two feet of building height. There is no setback requirement for I-1 zoned property.

Section 35-41 of the Alexandria City Code provides that when a less restrictive zone abuts a more restrictive zone the setback ratio and yard provisions of the more restrictive zone shall apply for a distance of 200 feet into the less restrictive zone. This brings about the result that unless a variance is granted, Lot 10A, belonging to the Dairy, is subject to the R-M zone side yard and rear yard setback requirements of the adjoining Fowler property, i.e., 5 feet and 7½ feet, respectively.

The Dairy had used the vacant lot (10A) here involved for storage space for bottles, milk cans, and other things. It desired to convert this open-air storage by erecting a building on the lot and submitted plans and detailed specifications for the construction of a building 27 feet in width (this being the width of Lot 10A) and 50 feet in length. The size and shape of the structure was dictated by the needs of the Dairy, the shape of the lot, the space available on

the property for improvements, and the location of other buildings in the area.

The Planning Department of the City advised the Dairy that the plans submitted were not appropriate in view of the setback requirements imposed upon this lot by the City Ordinance. The Dairy was advised that if it wished to pursue the matter further it could apply to the Board of Zoning Appeals for a variance of the side and rear yard requirements. Whereupon the Dairy applied to the Board for a variance under § 35-68(b) of the City Code.[1]

Mrs. Fowler, who expressed fear that the light, heat and air in and around her garden and house would be adversely affected if the variance were granted, objected thereto. After a hearing, as aforesaid, the Board granted the variances requested by the Dairy; it waived both the 5-foot side yard setback requirement and the 7½-foot rear yard requirement. In addition, the Board made the 7½-foot rear yard variance subject to the condition that the Dairy could not build higher than a rear garden wall previously erected by Mrs. Fowler on Lot 15, shown on the picture exhibits and the map.

Mrs. Fowler filed her verified petition of appeal pursuant to § 15-825, Code of Virginia, 1950, whereupon, after a hearing, the court entered the order affirming the Board as to the allowance of the 7½-foot variance in the rear yard setback requirement and reversing the Board as to the allowance of the 5-foot variance in the side yard requirement.

As aforesaid, no exception was taken to the ruling allowing the variance of 7½ feet in the rear yard setback requirement but both the Dairy and the Board excepted to the court's ruling reversing the Board and disallowing the variance of 5 feet in the side yard setback requirement.

The Board and the Dairy say that the assignments of error

---

[1] "Section 35-68. Powers.

"(b) To grant variations in the regulations when a property owner can show that his property was acquired in good faith and where by reason of the exceptional narrowness, shallowness or shape of a specific piece of property at the time of the effective date of the ordinance or where by reason of the exceptional topographical conditions or other extraordinary or exceptional situation the strict application of the terms of the ordinance actually prohibit or unreasonably restrict the use of the property, or where the board is satisfied, upon the evidence heard by it, that the granting of such variation will alleviate a clearly demonstrable hardship approaching confiscation as distinguished from a special privilege or convenience sought by the owner; provided, however, that all variations granted shall be in harmony with the intended spirit and purpose of this chapter and the ordinance."

resolve themselves into two questions which will be treated in the order presented: The first is:

"Was there shown an extraordinary or exceptional situation unreasonably restricting the use of property or a clearly demonstrable hardship that in light of all the evidence would render a strict application of the City's zoning laws of no useful purpose?"

In considering this, we must realize that over-all zoning laws are of a nonspecific and general nature. They are not perfect and can hardly be made perfect, thus the necessity for the creation of boards of zoning appeals. The very purpose of these boards is, within the confines of the law, to vary specific terms of zoning ordinances to the end that the intent of the zoning law may be effectuated, keeping in mind that the health, safety, morals and general welfare of the public is the basis for the enactment of such laws.

The plain intent and purpose of the ordinance (§ 35-68(b)) is to permit, through the Board of Zoning Appeals, the amelioration of the rigors of necessarily general zoning statutes by eliminating the necessity for a slavish adherence to the precise letter of the ordinance where, in a given case, little or no good on the one side and undue hardship on the other would result from a literal enforcement. *Lee, et al.* v. *Board of Adjustment of City of Rocky Mount,* 226 N. C. 107, 37 S. E. 2d 128.

In the instant case the Dairy requested a variance waiving a 5-foot side yard setback for 50 feet along the west side of its lot. The record discloses that this request, while of vital importance to the Dairy, is of no moment in so far as the public is concerned.

It is disclosed that Lot 10A was purchased by the Dairy in good faith and is used for storage purposes. The Dairy now wishes to enclose this space within a building. There is no substantial proof in the record that the building would adversely affect Mrs. Fowler's property. In fact, it would provide a brick wall along the east side of her lot and would screen the Dairy's activities from sight. Except for a slight discrepancy in height, the wall would not be unlike the one previously erected by Mrs. Fowler on Lot 15. What Mrs. Fowler is here asking is that the Dairy be required to create a 5-foot vacant space between her lot and the proposed building, which space would be unfit for use, constituting a complete waste of valuable land.

The purpose of zoning, *i.e.,* the protection of the public health, safety, morals and general welfare, will not be served by denying the variance. In its decision allowing the variance the Board said:

"The Board has based its approval of the applications for waiver of the seven and one-half foot rear setback (south side) and the five foot side setback (west side) on the existence of an exceptional situation whereby the strict application of the terms of the ordinance creating these requirements would unreasonably restrict the use of the property by the applicant. The Board is further satisfied upon the evidence heard by it, that the granting of this variation will alleviate a clearly demonstrable hardship approaching confiscation.

"Failure of the Board to grant this variance would also have the effect of creating an inaccessible area of seven and one-half feet in the rear and five feet on the side which would be a site for the collection of old papers, bottles and miscellaneous trash, and would be a danger to the health and welfare of occupants of this block and thus would not be in harmony with the spirit and purpose of the zoning laws."

The dispute narrows itself down to the use of this small strip of land five feet in width. The Dairy on the one hand is cramped for space and seeks to use its property. On the other hand Mrs. Fowler stands in fear of deprivation of light and air, of which the record fails to disclose she will be deprived.

Section 35-68 of the City Code which grants to the Board the right to make variances embraces the typical provisions usually found in legislation of this character. It evidences a clear recognition that there will arise from time to time exceptional situations which justly call for the granting of individual variances within the prescribed legislative conditions and standards and in harmony with the intended spirit and purpose of zoning ordinances, thereby providing a safeguard from unreasonable restrictions on the use of property. 62 C. J. S., Municipal Corporations, § 227(10), p. 528; 58 Am. Jur., Zoning, § 196, p. 1046; *Azalea Corp. v. City of Richmond,* 201 Va. 636, 640, 112 S. E. 2d 862, 865. We think such a situation has been shown by the Dairy.

The second question is:

"Was the decision of the Alexandria Board of Zoning Appeals contrary to law and arbitrary or did the court err in substituting its discretion for that of the board when in fact the board's action was open to a fair difference of opinion?"

We held in *Board of Zoning Appeals* v. *Combs,* 200 Va. 471, 475, 106 S. E. 2d 755, 758, that in determining whether a variance for a particular piece of property shall be granted the Board must con-

sider each case on its own particular facts or merits. In the performance of this duty the Board is clothed with discretionary power, and this power must be exercised intelligently, fairly and within the domain of reason, and not arbitrarily. There it was also said that the court may not disturb the Board's decision unless it has applied erroneous principles of law or where the Board's discretion is involved, unless the evidence before the court proves to its satisfaction that the Board's decision is plainly wrong and violative of the purpose and intent of the zoning ordinance. 200 Va., at p. 477, 106 S. E. 2d, at p. 759; *Azalea Corp.* v. *City of Richmond, supra,* 201 Va., at pp. 640, 641, 112 S. E. 2d, at pp. 865, 866.

"The rationale of the statutory scheme is that the Board of Adjustment shall apply expert discretion to the matters coming within its cognizance, and judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of the delegated discretion. The reviewing judicial authority may not exercise anew the jurisdiction of the administrative agency and merely substitute its own independent judgment for that of the body entrusted by the legislative with the administrative function." Yokely, Zoning Law and Practice, § 187. See also McQuillan, Municipal Law, § 25.309.

There is a *prima facie* presumption that the power and discretion of the Board of Zoning Appeals have been properly exercised, and its decision may not be disturbed unless it "appears from the record transmitted to the court, together with any additional evidence taken and procedure had under the statute, that the decision of the Board is plainly wrong." *Hopkins* v. *O'Meara,* 197 Va. 202, 205, 89 S. E. 2d 1, 3.

The testimony of Engineer-Surveyor Edward S. Holland, a member of the Board of Zoning Appeals and a witness admittedly qualified as an expert, gives in detail the reasons for the Board's granting the variance in question, which reasons are both logical and sound.

In addition to the record evidence, the Board viewed the premises on several occasions. This must be taken into consideration. "A zoning board in passing on an application for a variance, may view the locality and may also give consideration to matters within the personal knowledge of its members in arriving at a decision." Rhyne, Municipal Law, § 32.21.

We are of the opinion that the lower court erred when it ignored the well-reasoned findings of the Board of Zoning Appeals and sub-

stituted its own independent judgment for that of the Board.

It follows that the order appealed from must be reversed and the decision of the Board of Zoning Appeals affirmed and made effective.

*Reversed and final judgment.*