## Richmond

Tidewater Utilities Corporation v. City of Norfolk, Et Al.

April 22, 1968.

Record No. 6531.

Present, Eggleston, C.J., Buchanan, Snead, l'Anson, Gordon
and Harrison, JJ.

*Robert R. MacMillan* (*E. Leslie Cox; Shepard W. McKenney; Breeden, Howard & MacMillan; Kaufman, Oberndorfer & Spainhour*, on brief), for appellant.

*Gordon B. Tayloe, Jr.* (*Leonard H. Davis*, on brief), for appellees.

Snead, J., delivered the opinion of the court.

Tidewater Utilities Corporation appeals from a decree entered by the court below on June 21, 1966, whereby a decision of the Board of Zoning Appeals of the City of Norfolk, hereinafter called Zoning Board, which denied Tidewater's request for a variance was affirmed.

Tidewater is a public service corporation operating under a certificate of public convenience and necessity issued by the State Corporation Commission as well as a certificate of standards issued by

the State Water Control Board. In 1956, Tidewater constructed its plant to provide sewage disposal and treatment for the Poplar Halls subdivision which was then in Princess Anne county. The facility is located in the subdivision on the banks of Broad Creek, and Tidewater discharges its effluent from the treated sewage into that body of water. Broad Creek empties into the Elizabeth River. Poplar Halls was subsequently annexed to the city of Norfolk and is zoned R-2 (residential). In 1960, Tidewater was permitted by the city to enlarge its treatment plant even though "[t]he first zoned area in which this plant would be permitted would be an M-1 zoned area."

In order to meet the standards for treatment of sewage fixed by the Water Control Board and to correct inefficiencies in its system, Tidewater converted its No. 2 digester from the anaerobic to the aerobic digestion process.[1] Following conversion of the No. 2 digester, Tidewater received permission from the Water Control Board to convert its No. 1 digester to the aerobic process. (The record does not show whether this change has been made.) However, because the plant's operation still did not meet the standards of the Water Control Board and because of complaints made by local residents, Tidewater sought to expand its sludge drying beds. According to the plans filed, the existing drying beds are enclosed by a covered structure measuring approximately 48 feet by 58 feet. The proposed addition would add 48 feet to the length of the structure. Tidewater submitted the plans for the expansion to the Water Control Board for approval.

By letter dated August 12, 1965, E. C. Meredith, Director of the Division of Engineering of the Water Control Board, advised Tidewater "[a]s no additional load is proposed to this system and additional sludge drying beds will improve the sludge handling, this proposal is approved by this Division * * *." On September 7, 1965,

---

[1] Tidewater's facility is operated substantially as follows:

Raw sewage received by the plant is given primary treatment in settling tanks whereby solids are separated from liquids. The solids, known as sludge, are pumped from the settling tanks to digesters. The liquids from the settling tanks are pumped into additional tanks for further treatment and ultimate discharge into Broad Creek. A digester is similar to a large septic tank and may be either aerobic or anaerobic. The aerobic process employs oxygen in order to achieve the biological decomposition necessary to render the sludge innocuous, while in the anaerobic process decomposition is achieved with the absence of oxygen. The aerobic method of digestion is more costly but is generally believed to be more efficient. Sludge treated by either the aerobic or anaerobic method is pumped from the digester on to drying beds. After thorough drying, the sludge becomes a harmless and inoffensive material resembling peat moss.

Tidewater was notified by letter that the Water Control Board had voted to approve the plans and specifications for the additional drying beds. Upon receipt of this letter, Tidewater requested a building permit from H. C. Hoggard, III, Building Inspector and Zoning Administrator for Norfolk. The request was denied. Hoggard took the position that Tidewater should not be allowed to "expand their non-conforming sewage treatment plant in an R-2 zoned area which is not permitted under the Zoning Ordinance for the City of Norfolk."

Tidewater appealed to the Zoning Board for a variance, and a public hearing was had on the request by the Zoning Board on October 21, 1965. At the hearing,[2] Tidewater's case was presented by its attorney, Shepard W. McKenney. His statement to the Zoning Board in support of the application was in the nature of both testimony and argument. The gist of his statement follows:

McKenney acknowledged that Tidewater's facility was faced with problems. He explained that because its anaerobic digestion process had never functioned properly, a switch was made to aerobic digestion, which was more efficient in that it could more effectively treat the system's sludge. However, "the system requires additional sludge drying beds in order to treat the increased output from the aerobic digester." He also pointed out that because the drying beds were not of sufficient size, "all of the solid matter can't get out of the settling tanks and there is a consequent effect on the effluent or the water which is pumped into the river." Further, he said, an aerobic digester properly operated produces no odor. "The only production of odor is when the digester has not been able to handle the amount of solid matter which is in it, and it bubbles over, then the odor comes."

McKenney emphasized that the proposed enlargement of the sludge drying beds would not increase the capacity of the plant. He stated that Tidewater was authorized by the Water Control Board to serve 804 connections; that at the time it was serving 748 connections; that it was not seeking to serve a larger area; that its object was to meet the requirements of the Water Control Board to prevent pollution of Broad Creek and to abate the objectionable features resulting from the operation of the plant complained of by residents of Poplar Halls. McKenney also said that the proposed addition would not be easily

---

[2] The hearing before the Zoning Board was had on the theory that the sewage plant is a nonconforming use, in that it is situated in a residential area, zoned R-2. Moreover, Tidewater, in its petition for *certiorari* alleged that fact and it is bound here by that allegation.

visible from outside because the plant was surrounded by trees, and that if the variance was not granted, Tidewater, as a public utility, would be subject to fines, penalties, and revocation of its license for discharging substandard effluent into Broad Creek. He stated that there was then pending a proceeding instituted by the Water Control Board seeking an injunction against Tidewater from polluting Broad Creek.[3]

When asked by a member of the Zoning Board whether Tidewater could correct the situation without any addition and by reducing the number of sewer connections, McKenney pointed out: "[W]e have an obligation as a public utility to serve these people. Our Certificate of Authority requires it".

Robert Jennings, Area Representative for the State Water Control Board, was called by Tidewater to testify in its behalf. Jennings stated that the additional sludge drying beds were approved by the Water Control Board with the provision that the "authorized loading" capacity of the plant would not be increased, because this would give the owner more "flexibility" in handling its sludge. However, Jennings could not say that the additional drying beds would solve all of Tidewater's disposal problems. Jennings was of opinion that a central collection system such as that operated by the Hampton Roads Sanitation District and the abandonment of Tidewater's plant would be the complete answer to the problem. Jennings further stated that "by good operation and maintenance, odors will be reduced to a minimum and the effluent will meet with the criteria established by the State Water Control Board."

McKenney informed the members of the board that J. R. Sutherland, Regional Engineer of the State Health Department, was present at the hearing and that his testimony would be substantially the same as that of Jennings. Thus, Sutherland was not called to testify.

Neighboring property owners, their attorneys and other interested parties appeared in opposition to the request for a variance. In sub-

---

[3] On August 31, 1966, the Circuit Court of the City of Norfolk entered a decree enjoining Tidewater from operating its plant in violation of Certificate No. 1045 issued by the Water Control Board. The effective date of the injunction was fixed ninety days from the date of the decree. We granted Tidewater an appeal. *Tidewater Utilities Corp.* v. *Commonwealth of Virginia*, Record No. 6668. The parties subsequently "filed a joint petition praying that this suit be dismissed without prejudice for the reason that the parties have agreed upon a solution to the matters in controversy". This court, by order entered March 6, 1968, remanded the case to the court below "for such further proceedings as may be required to carry out the terms of the agreement."

stance, they stated that Tidewater had provided poor service; that it did not respond to complaints; that the plant, especially during the summer months, emits a "terrific" odor or stench; that "foam" from the plant at times becomes airborne and falls on nearby property; that when sewer mains would collapse raw sewage "comes up" in the streets; that at times Broad Creek was contaminated with "grease and slime" from the system; that the plant was noisy; that the proposed expansion would not be hidden from view; that there were vacant houses in the subdivision because of existing conditions, and that property values already depressed by the presence of the plant would decline further if the expansion of the sludge beds were allowed.

The record also contains a letter dated October 13, 1965, written by Frank H. Miller, General Manager and Chief Engineer of the Hampton Roads Sanitation District, to H. C. Hoggard, III, Building Inspector & Zoning Administrator. In it Miller stated, among other things, that it was the policy of the District to oppose enlargement of independent plants such as Tidewater's; that such plants should be ultimately abandoned; that Tidewater's existing facility was incapable of compliance with the rigid standards set by the Water Control Board, and that the District could take over Tidewater's function.

It is clear from statements made by the opposition that residents of Poplar Halls wanted the operation of Tidewater's plant discontinued. R. H. Hopkins, counsel for certain property owners near the sewage plant, stated "they [property owners] don't want that plant there." He further stated "I think the permit should be withdrawn altogether and they [Tidewater] should never have anything out there like this." George Gray, also an attorney representing property owners, argued that "[t]his is an evil condition", and that his clients would be "happy indeed" if Hampton Roads Sanitation District would take Poplar Hall's sewage.

At the conclusion of the hearing, the Zoning Board went into executive session and decided to defer its decision pending receipt of further information from the Hampton Roads Sanitation District Commission and Tidewater. The record does not show what, if any, additional information was received. By letter dated December 16, 1965, Tidewater was informed that its appeal had been denied.

Tidewater, pursuant to Code, § 15.1-497, filed in the court below a petition for *certiorari* to review the decision of the Zoning Board. An order granting *certiorari* was entered on January 13, 1966. After a consideration of the record of the proceedings before the Zoning

Board, the memoranda of law prepared by counsel and argument thereon, the court affirmed the decision of the Zoning Board. In its decree, dated June 21, 1966, the court ruled that Tidewater's plant was a nonconforming use; that the proposed construction of the sludge drying beds would be an expansion of such use, and that Tidewater was not entitled to a variance because "the hardship which the petitioner claimed is not within the criteria for a variance as set out in Section 20, Subsection 4b, Zoning Ordinance of the City of Norfolk * * *." It is from this decree that Tidewater has appealed.

The dominant question presented by Tidewater's two assignments of error is whether the evidence shows, as a matter of law, that the trial court erred in affirming the decision of the Zoning Board. Tidewater contends that the evidence adduced before the Zoning Board clearly establishes that under Code, § 15.1-495 it was entitled to the variance sought.

The provisions of Code, § 15.1-495 (b) are identical with those of Section 20, Subsection 4(b) of the Norfolk Zoning Ordinance. There it is stated that the Zoning Board may grant a variance from the terms of the ordinance not contrary to public interest, when, "owing to special conditions a literal enforcement of the provisions will result in unnecessary hardship". The section further provides in part:

"When a property owner can show that his property was acquired in good faith and where by reason of the exceptional narrowness, shallowness, size or shape of a specific piece of property at the time of the effective date of the ordinance, or where by reason of exceptional topographic conditions or other extraordinary situation or condition of such piece of property, or of the use or development of property immediately adjacent thereto, the strict application of the terms of the ordinance would effectively prohibit or unreasonably restrict the use of the property or where the board is satisfied, upon the evidence heard by it, that the granting of such variance will alleviate a clearly demonstrable hardship approaching confiscation, as distinguished from a special privilege or convenience sought by the applicant, provided that all variances shall be in harmony with the intended spirit and purpose of the ordinance.

"No such variance shall be authorized by the board unless it finds:

"(1) That the strict application of the ordinance would produce undue hardship.

"(2) That such hardship is not shared generally by other properties in the same zoning district and the same vicinity.

"(3) That the authorization of such variance will not be of substantial detriment to adjacent property and that the character of the district will not be changed by the granting of the variance."

It should be noted that the provisions of the first paragraph of the above quoted section are stated in the disjunctive. Therefore, Tidewater was required to show one of several situations which would unreasonably restrict the use of its property in addition to satisfying the three specifically enumerated tests in order to sustain its request for a variance.

We discussed in *C. & C. Incorporated* v. *Semple*, 207 Va. 438, 441, 150 S.E.2d 536, 538, principles involved on appeal from a zoning board. There we stated:

"In *Board of Zoning Appeals* v. *Combs*, 200 Va. 471, 477, 106 S.E. 2d 755, 759, we held that '[t]he court may not disturb the board's decision unless it has applied erroneous principles of law or where the board's discretion is involved unless the evidence before the court proves to its satisfaction that the board's decision is plainly wrong and violative of the purpose and intent of the zoning ordinance.' See also *Burkhardt* v. *Board of Zoning Appeals*, 192 Va. 606, 613, 66 S.E. 2d 565, 569; *Hopkins* v. *O'Meara*, 197 Va. 202, 205, 89 S.E.2d 1, 3, and *Board of Zoning Appeals of Alexandria* v. *Fowler*, 201 Va. 942, 948, 114 S.E.2d 753, 758; 2 Yokley, *Zoning Law and Practice*, § 15-7 (3d ed.) at p. 148, and 8A McQuillin, *Municipal Corporations*, § 35.309 (3rd ed.).

"On appeal there is a presumption that the Board of Zoning Appeals acted correctly and the burden is on the appellant to show to the satisfaction of the court either that the permit granted by the Board was contrary to law or that the Board's decision was plainly wrong under the evidence. See *Board of Zoning Appeals* v. *Combs, supra,* 200 Va. at p. 476, 106 S.E.2d at p. 759; *Wicker Apartments, Inc.* v. *City of Richmond,* 199 Va. 263, 269, 99 S.E.2d 656, 660; *Hopkins* v. *O'Meara, supra,* 197 Va. at p. 205, 89 S.E.2d at p. 3."

It is not disputed that Tidewater acquired its property in good faith or that the plant is lawfully on the premises. As a public utility, Tidewater is required to furnish "reasonably adequate service" to its patrons. Code, § 56-234. In addition, the service rendered has to conform with the certificate of standards issued by the Water Control Board.

The evidence clearly shows that because of inadequacies in its equipment, Tidewater was unable to comply with the requirements

of the Water Control Board. Code, § 62-41 makes it unlawful to discharge sewage in violation of any condition contained in a certificate issued by the Water Control Board. Code, §§ 62-33 and 62-42[4] provide severe penalties for any owner violating or refusing to obey any regulation or order of the Water Control Board.

The proposed addition to the sludge drying beds has the approval of both the Water Control Board and the State Health Department. It will contribute to the plant's efficiency and will help prevent or reduce some of the existing objectionable features. Without such improvement there is little hope that Tidewater's plant can furnish its customers reasonably adequate service, which it is required to do. The proposed addition would not increase the overall capacity of the system, but would "improve the sludge handling", and unless the enlargement of the drying beds is permitted Tidewater will be subjected to heavy fines and an injunction which, in effect, would prevent the plant's operation and thus render it virtually valueless.

We find that the evidence shows, as a matter of law, that a strict application of the zoning ordinance produces an undue hardship approaching confiscation of Tidewater's property; that "such hardship is not shared generally by other properties in the same zoning district and the same vicinity"; and that the granting of the variance will not be a "detriment to adjacent property and that the character of the district will not be changed" thereby. Moreover, the granting of a variance to permit the additional sludge drying beds would not adversely affect the health, safety or general welfare of the neighborhood, but would do substantial justice and be in harmony with the intended spirit of the zoning ordinance.

Our conclusion is that the Zoning Board's decision which denied the variance was plainly wrong under the evidence adduced. Thus, the court below, which heard no additional evidence, erred in affirming the Zoning Board's decision.

The order appealed from is reversed and the case remanded with

---

[4] § 62-33. "Any owner violating or failing, neglecting or refusing to obey any rule, regulation or order or requirement of the Board may be compelled to obey same and to comply therewith by injunction, mandamus or other appropriate remedy."

§ 62-42. "Any owner violating any provision of this chapter or failing, neglecting or refusing to comply with any special final order of the Board, or a court, lawfully issued as herein provided, shall, upon conviction be liable to a fine of not less than fifty dollars nor more than five hundred dollars for each violation within the discretion of the court, and each day of continued violation after conviction shall constitute a separate offense and may subject the system, business, or establishment causing pollution in violation of this chapter to abatement as a nuisance."

direction that the court below enter an order granting Tidewater the variance it sought.

*Reversed and remanded.*