## CIRCUIT COURT OF LOUDOUN COUNTY

Bull Run Civic Association et al.

v.

Board of Zoning Appeals
of Loudoun County et al.

October 25, 1983

Cases No. (Law) 6731, (Chancery) 7021x,
(Consol. Law) 6731

By JUDGE THOMAS D. HORNE

On October 20, 1980, Nathan and Irma Bolling submitted an application to the Board of Zoning Appeals of Loudoun County for a special exception to use and operate a stone quarry on approximately 216 acres located on the east side of Highway 659 in Loudoun County, Virginia. The zoning of these 216 acres then, and continuing to the present time, is "A-3, Agricultural Residential." Among the various uses permitted by special exception in the "A-3" District is the "extraction of natural resources."

Under the Schedule of District Regulations of the Loudoun County Zoning Ordinance, "quarries," "mines," "rock crushers," and "screening plants" are permitted uses specified by name in the "I-1, Industrial District." An application for a special exception to "extract natural resources" in an "A-3" zoning district must first be reviewed by the Loudoun County Planning Commission prior to its being acted upon by the Board of Zoning Appeals. Consequently, the Bollings' application was referred to the Planning Commission for its study and recommendation.

On February 25, 1981, James L. Van Zee, as Zoning Administrator for Loudoun County, responded to an inquiry from the Planning Commission by way of a memorandum opinion

which has come to form the basis of the present certiorari proceeding. In his opinion, Mr. Van Zee addressed several issues which he determined were raised by the inquiry. This included the following:

1. The propriety of the application in light of the existing zoning of the 216 acres.

2. The extent, under a valid permit issued in 1955, to which the quarrying and processing of stone extracted from a portion of the 216 acres would be affected by the application.

3. The current zoning status of the rock crusher and processing plant and the effect of the application on their continued use.

Mr. Van Zee determined, in his opinion to the Planning Commission, that the quarrying of stone was a permitted use in an "A-3" zoning district under the category of "extraction of natural resources," and could be considered "independently of the processing activity, even though both are found on the same property." Secondly, he found that the 216 acres included "150± acres which the BZA has ruled the 1955 permit governs as well as the expansion area of 66 acres," and that the inclusion of the "150± acres was done in order to upgrade the area that has already been quarried and to require such things as the buffering of the crusher." Lastly, he concluded that the crusher and processing plant "would not be allowed in an A-3 zone either by right or by special exception," and therefore, in his opinion was a "nonconforming use under the present ordinance" and "as long as it is not extended, expanded or increased in any way, its validity is not affected by this special exception application."

The Planning Commission vote on the permit application was equally divided between recommending approval and denial. The opinion of the Zoning Administration to the Commission of February 25, 1981, was subsequently appealed by Petitioners to the Board of Zoning Appeals. By a "Finding of Fact and Order" dated October 15, 1981, the Board of Zoning Appeals by a vote of 5-0, elected to uphold the decision of the Zoning Administrator.

In their "Finding of Fact and Order" of October 15, 1981, the Board of Zoning Appeals determined that the quarrying of stone was a permitted use by special exception in the A-3 zoning district under the category

of "extraction of natural resource." They found that stone quarrying was "a logical subset of the definition of extractive industries," and that "[t]he fact that quarrying is a permitted use in an I-1 zone does not preclude it as a permissible use in an A-3 zone as a special exception." While originally excepted by the Petitioners in their pleadings, this decision is no longer challenged, and therefore need not be addressed by the Court.

The Board of Zoning Appeals, in its decision, determined that the accessory rock crusher presently in operation was a "non-conforming" use. Referring to the crusher, the Board in its "Findings of Fact and Order" approved of the Zoning Administrator's interpretation that:

> The existing crusher is a non-conforming use under the present ordinance; and as long as it is not extended, expanded or increased in any way, its validity is not affected by this special exception application (sic); the present application is for the "extraction of natural resources," not processing; so, therefore, it may be considered independently of the processing activity, even though both are found on the same property. . . . Further, the crusher will not have a greater use than it had previously.

Neither the Petitioners nor Intervenors challenged the determination by the Board and the Zoning Administrator that the crusher was a non-conforming use. This determination is neither inconsistent with the history of its use nor with the existing zoning of the parcel.

On June 15, 1955, the Board of Zoning Appeals of Loudoun County granted a use permit to B. A. Powell and N. L. Bolling to erect and operate a stone quarry. The issue of the exact acreage encompassed by that permit was the subject of other proceedings before the Board of Zoning Appeals which are presently awaiting review by this Court. Under the zoning then in effect, the operation of the quarry and accessory crusher were permitted uses by permit.

In January, 1958, a zoning permit was granted to N. C. Bolling to install an accessory rock crusher and screen at the quarry. With the passage of a new County

Zoning Ordinance in July, 1959, the zoning classification of the Bolling property was changed. The effect of this change was to exclude use of the property as a quarry and stone processing facility. This resulted in the continuing operation of the existing quarry as a non-conforming use. In November of 1959, N. L. Bolling and his wife acquired a tract of land adjacent to the property upon which the stone quarrying and processing activity were continuing as non-conforming uses.

In 1972, the zoning of the tract covered by the permit and of that acquired in November of 1959 was changed. The 1972 rezoning placed these tracts in a new zoning category ("A-3"). As noted earlier, while this rezoning did not provide for quarrying as a specified use, it did permit the "extraction of natural resources" by special exception.

In these two cases, consolidated for hearing by agreement of counsel, Petitioners have withdrawn and abandoned all but one of their specific objections to the actions of the Board of Zoning Appeals as reflected in their decisions of October 15, 1981. This objection is contained in paragraph 5 of Petitioners' Exhibit "B", which was incorporated in, and made a part of, their instant Petition for Writ of Certiorari.

Petitioners' Exhibit "B", attached to the Petition for Writ of Certiorari (Law No. 6731) is a copy of the Application for Appeal from the decision of Mr. Van Zee on February 25, 1981. They state therein that:

> The Zoning Administrator erred in ruling that the existing crusher is a non-conforming use under the present Loudoun County Zoning Ordinance and may therefore serve the 66-acre expansion of the quarry should a special exception permit be granted for the extraction of natural resources. The applicants herein contend that the Bull Run crusher became a non-conforming use in 1959 and as such could not, as a land use, be extended, expanded or increased in any way under the zoning laws of the County of Loudoun and the Commonwealth of Virginia, and the applicants further contend that the operations of said crusher have been greatly extended, expanded and increased in violation of law.

On review, this Court may reverse or affirm, wholly or partly, or may modify the decision of the Board of Zoning Appeals. § 15.1-497, Code of Virginia. The record of proceedings before the Board of Zoning Appeals of September 17, 1981, reveals there was considerable discussion concerning the status of the crusher and the Zoning Administrator's ruling with respect to its continued use and operation under existing zoning. The following portions of the transcript, while not exhaustive, demonstrate that the issue of the status of the crusher and its relationship to existing zoning and the application under consideration were in evidence before the Board,

> Mr. Hanes (p. 44): "The fifth thing, we said the zoning administrator erred in ruling that while the crusher is a non-conforming use it may nevertheless serve as crusher to the 66 acres expansion under. . . we submit that under the Loudoun ordinance and the Virginia law, non-conforming use (sic) may not be expanded, here the crusher is appurtenant. . .

> (p. 46) "What does appurtenant mean? Well, without giving you Black's Law Dictionary and everybody's dictionary, I think you all probably know. It means connected to or incidental to a main use, appurtenant to, it is a part of a stone quarry, the appurtenant structure. . .

> (p. 48) "At any rate, I think that Mr. Van Zee's argument that the crusher is a use unto itself is ridiculous. It is an appurtenant use and they have applied for it again incidentally and it's in the planning process; so we raise that as an issue in the appeal."

> Mr. Polen (p. 59): "We're not addressing ourself to that 66 acres tonight."

> Mr. Hanes: "Yes, you are, too."

> *   *   *

> Ms. Taylor (p. 66): "Well, that's the problem that I have with your argument, that the application says they applied for a stone quarry and appurtenant structures, they must have been

applying under the special exception section that deals with extraction of natural resources since they applied for a special exception at all."

Mr. Hanes (p. 67): "That's not what I'm saying. I'm saying the first thing they applied for a stone quarry and appurtenant structures on the face of their application automatically made it a zoning application and not an application that should be processed for a special exception."

(p. 73): "Mr. Bolling just doesn't have just a free standing crusher down there. He has a crusher which is appurtenant to his 150 acre quarry. Now, what he's trying to do is to make that appurtenant, that same one appurtenant to a 216-acre quarry which includes 16 (sic) acres that he cannot presently, by right, quarry in. Now it may sound technical, but I think if you stop and think about it, it makes a great deal of logical sense to me, that it is expansion of a non-conforming use to use that someone and it was a convoluted, contorted process that Mr. Van Zee went through to say that it's non-conforming. And, therefore, you could use it for quarrying rock for the rest of eternity on time, but that doesn't make any sense. It is appurtenant use and the quarry is the 150 acres."

Ms. Taylor (p. 89): "With respect to the non-conforming use of the crusher, haven't some of the 150 acres that the crusher originally served been depleted."

Mr. Mahan (p. 89): "Yes."

Ms. Taylor (p. 89): "So that the amount of use. . . or the amount of rock that would be crushed, it wouldn't necessarily be increased, would it?"

Mr. Mahan: "Maybe not, but it would be rock,

it would be treated from the 66 acres not a part of."

* * *

Mr. Nalls (p. 111): "The non-conforming use as to the crusher, I find it approaching to ludicrous and the reason I do this, when the crusher was authorized to be there, they looked at a set of fact. . . What is this impact going to be. . . (p. 112) Actually, that use on that non-conforming use by our voluntary action is to be constricted, not expanded."

* * *

Ms. Taylor (p. 117): "Just one question about the crusher. This extension into the 66 acres will not involve increased hours or time of the crusher as far as you know, right?"

Mr. Nalls: "Not only would it not incur an increase, most likely and possibly the case that there will be a decrease."

* * *

Mr. G. Hanes (p. 120): "As far as the non-conforming use expanding, I think that's a red herring quite frankly. We're not going to expand the crusher, we're going to decrease the use of that crusher through proposed changes and that hours of operation."

A review of the record demonstrates that the determination of the Zoning Administrator that the crusher was a non-conforming use, that it is a use which "would not be allowed in an A-3 zone either by right or by special exception," was challenged by petitioners or intervenors. Their findings confirmed that interpretation. The Board of Zoning Appeals, while confirming the Zoning Administrators' interpretation voted to deny Petitioners' Appeal. While denying the Appeal, the Board, as one of its members observed, was making a decision as to the appropriateness of the application. The transcript of the October 15,

1981, hearing before the Board of Zoning Appeals shows the following:

> Ms. Taylor (p. 11, 12, 13): "I think it's important for us to remember what the issue, tonight, is and that is simply whether or not this application is one that may be made. . . All we're considering tonight is whether the applicant had the right under the zoning ordinance to make the application he did. . . One other thing I could add. It has really sort of been underplayed as part of the appeal, but is the aspect having to do with the non-conforming use of the crusher increased. It appeared to me in the testimony at the public hearing that the crusher itself would not, in fact, have a greater use than it's had in the past because some of the last minute pleas explaining is the actual hours of operation of the crusher is not increased."

Therefore, the record demonstrates that the issue of the continued operation of the rock crusher was considered by the Board and the Zoning Administrator as a use for which an exception was being sought within the framework of the Bolling application. It further demonstrates that the crusher as an appurtenant structure to the operation of a stone quarry would process stone extracted from 216 acres which included some 66 acres acquired after the crusher became a non-conforming use.

The Board has determined that the crusher is a nonconforming use; that it, a use which is "not to be allowed in an A-3 zone either by right or by special exception." This determination was left unchallenged by either petitioner or intervenors by way of appeal from the decision of the Zoning Administrator or by written petition for review by this Court. In addition, this Court does not find such determination to be contrary to law or plainly wrong. *Tidewater Util. Corp.* v. *City of Norfolk*, 208 Va. 705 (1968). To the extent that this determination as to the appropriateness of the application constitutes a legislative act, the reasonableness of such determination may be said to be "fairly debatable." *Board of Supervisors, etc.* v. *Southland Corporation*, 224 Va. 514 (1982); *Bell* v. *City Council of City of Charlottesville*, 224 Va. 490

(1982). Thus, the Court does not find the evidence introduced by the intervenors relating to the use of the crusher as a permitted "accessory use" to the "extraction of natural resources" either relevant or persuasive.

The record, however, clearly demonstrates that the existing use and operation of the crusher was accessory to the existing quarry operation being conducted under the 1955 permit. An accessory use may not be made the basis for a non-conforming principal use. *Knowlton* v. *Browning Ferris*, 220 Va. 571 (1979); *Pushnik* v. *Hempfield Township*, 402 A.2d 318 (1979). Therefore, the use of the crusher, as an accessory non-conforming use to the operation of the existing quarry under the 1955 permit, must be limited to the processing of stone extracted in accordance with the permitted principal use. Thus, to extend its use beyond the processing of stone extracted in accordance with the 1955 and 1958 permits, would convert its use from a non-conforming accessory use to that of a non-conforming principal use. Such a result would be contrary to law; and to the extent to which the application, as interpreted by the Board, would permit such operation, it would constitute a request for a rezoning and not a request for a special exception.

The Board of Zoning Appeals determined that "as long as 'the crusher was,' not extended, expanded, or increased in any way, its validity is not affected by the application" and that "the application was 'for the extraction of natural resources, not processing'." They also determined that the crusher would, "not have a greater use than it had previously." In determining the application to be an appropriate application for a special exception and not a request for a rezoning, the Board by inference determined that the crusher (as an "appurtenant structure"), the status and use of which were fully argued and dismissed, could be used to process stone extracted from the 66 acres acquired in 1959. This determination would be wholly inconsistent with their determination, not challenged, that the crusher was a non-conforming use.

Accordingly, the decision of the Board of Zoning Appeals of October 15, 1981, will be modified so as to limit the appropriateness of the application for special exception as to the crusher (as an appurtenant structure) to the processing of stone extracted pursuant to the 1955 permit. This would exclude the processing of stone

to be extracted from the additional 66 acres included within the present application.