# CIRCUIT COURT OF FAIRFAX COUNTY

Virginia Psychiatric Co., Inc.,
d/b/a Dominion Hospital

v.

Zoning Appeals Board
of Fairfax County et al.

May 11, 1998

Case No. (Law) 167378

BY JUDGE JANE MARUM ROUSH

This matter came on to be heard on April 9, 1998, on the appeal of Virginia Psychiatric Co., Inc., d/b/a Dominion Hospital ("Dominion" or the "Hospital") pursuant to Va. Code § 15.2-2314 of a decision of the Board of Zoning Appeals of Fairfax County (the "BZA"). The BZA reversed the determination of Jane W. Gwinn, the Zoning Administrator of Fairfax County (the "Zoning Administrator"), and ruled that Dominion must obtain an amendment to its special exception permit in order to operate a residential treatment facility ("RTC") for adolescents at its location on Sleepy Hollow Road in the Seven Corners area of Fairfax County.

The Court concludes that the BZA's decision to reverse the Zoning Administrator was not plainly wrong. Therefore, the Court will enter an order affirming the BZA's decision.

### Facts

In 1966, Dominion's predecessor in interest began to operate a nursing home at 2960 Sleepy Hollow Road. In 1970, the BZA granted a Special Use Permit that allowed up to 100 beds at the nursing home to be used for psychiatric patients "as part of the care given in a nursing home" subject to twelve conditions. Among those conditions were that there be no patients

committed by court order, no violent patients, no outpatients, and no "drug patients." In the mid-1970s, without further amendment of its special use permit, the facility began operating as Dominion Psychiatric Treatment Center.

According to Dominion, in the 1970s, the hospital regularly treated adolescent psychiatric patients for stays of up to one year. In the 1980s, with the advent of managed health care, the average length of stay was greatly reduced, based on the unwillingness of health insurers to pay for longer stays. Presently, Dominion treats adolescents in crisis for up to about two weeks. After the patients are stabilized, they must obtain longer term treatment elsewhere.

In 1990, the Board of Supervisors of Fairfax County amended the 1970 Special Use Permit by approving a Special Exception intended "to phase out the nursing home" and "expand psychiatric treatment facilities," subject to seventeen conditions. Thereafter, the hospital was permitted to have a limited number (no more than thirty beds) of committed patients, outpatients, head trauma patients, and Alzheimer patients.

In the spring of 1997, Dominion applied to the Virginia Department of Mental Health, Mental Retardation, and Substance Abuse Services (the "Department") for a license to provide psychiatric care to adolescents in a twenty-bed RTC. The Department, in turn, asked the Zoning Administrator whether the operation of an RTC was permitted pursuant to the terms of Dominion's 1990 Special Exception.

The Zoning Administrator determined that the operation of an RTC was in conformance with the conditions of the 1990 Special Exception. She concluded that the 1990 Special Exception expressly incorporated the terms of the 1970 Special Use Permit which allowed for the provision of any type of psychiatric service, subject only to certain conditions regulating the types of patients which may be treated.

In June, 1997, several citizens from the neighborhoods surrounding Dominion Hospital appealed the Zoning Administrator's determination to the BZA. The citizens argued that Dominion is limited to providing only the treatment programs specifically approved in the 1990 Special Exception and that the creation of any other program requires an amendment to the Special Exception. The citizens further argued that an RTC is a new and expanded use of the property which was not approved in 1990 and thus is not permitted without an amendment to the Special Exception.

After public hearings on September 23, 1997, and November 18, 1997, the BZA reversed the determination of the Zoning Administrator. As set forth by the BZA, "the BZA's decision in this case does nothing more than require

Dominion to apply to the Board of Supervisors for a special exception amendment. It does not irrevocably forbid the RTC use."

On December 9, 1997, Dominion Hospital appealed the BZA's decision to this Court by filing its Petition for Writ of Certiorari.

## *Standard of Review*

A Circuit Court may reverse a decision of the BZA only if it was plainly wrong, based on erroneous legal principles, or not supported by the record. Thus, the Circuit Court must give deference to a decision by the BZA. *Donovan v. Board of Zoning Appeals,* 251 Va. 271 (1996); *Ames v. Painter,* 239 Va. 343 (1990). As the Supreme Court of Virginia summarized:

> A decision of a Board of Zoning Appeals is presumed to be correct. And the burden is on the appealing party to overcome this presumption in the trial court. A court may not disturb a Board's decision unless the Board applied erroneous principles of law or its decision was plainly wrong and violated the purpose and intent of the zoning ordinance. In *Board of Zoning Appeals v. Fowler,* 201 Va. 942, 948 (1960), we explained that zoning boards exist in order to apply their expert discretion to matters coming within their cognizance. In *Fowler,* we went on to note that judicial interference is permissible only for relief against arbitrary or capricious conduct constituting a clear abuse of discretion. Finally, in *Fowler,* we stated that there is a prima facie presumption that the power and discretion of a Board of Zoning Appeals has been properly exercised.

*Board of Zoning Appeals v. O'Malley,* 229 Va. 605, 608 (1985) (internal citations omitted).

## *Arguments*

### I. *Dominion's Position*

Dominion argues that the Zoning Administrator correctly determined that Dominion need not obtain an amendment to its Special Exception in order to operate the RTC. Dominion first obtained approval to operate "psychiatric facilities" in 1970 through its Special Use Permit. The 1990 Special Exception states that its purpose is to "expand" the psychiatric treatment facilities. The Special Exception does not limit Dominion to providing only those activities

specifically mentioned in the Special Exception because the 1990 Special Exception incorporates the uses authorized by the 1970 Special Use Permit.

Second, Dominion argues that the 1970 Special Use Permit authorized the establishment of an RTC because it permitted "psychiatric facilities" at Dominion and limited "this facility for psychiatric care" to "no more than 100 beds." Dominion argues that the 1970 Special Use Permit does not limit the types of psychiatric services Dominion can provide, so long as it does not exceed one hundred beds.

Next, Dominion argues that there is no evidence in the record to support the BZA's reversal of the Zoning Administrator's determination because the record does not support the conclusion that the RTC constitutes a new and expanded use of the property. Dominion contends that the record overwhelmingly demonstrates that Dominion has been providing psychiatric treatment to adolescents since its inception in 1970 and that Dominion has treated over 12,000 adolescents for various psychological difficulties. Dominion argues that the re-establishment of an RTC is simply a continuation of Dominion's historical, full-service treatment of adolescents. As such, the RTC cannot be classified as a new use which requires an amendment to the Special Exception. Dominion asserts that the BZA's determination is plainly wrong, not supported by the record, and must be reversed.

## II. *BZA's Position*

The BZA argues that Dominion "had not been given leave to operate a 'complete continuum' psychiatric hospital by the BZA's 1970 Special Permit." The BZA explains that the 1970 Special Use Permit was expressly limited to a nursing home and that in 1970 the BZA did not intend that a "psychiatric unit serving convalescent residents at a nursing home would spontaneously metamorphose into an independent psychiatric hospital." (Respondent's Memo, p. 6.) The BZA argues "it is manifest from the record of the BZA hearing of October 20, 1970, that the BZA had no intention of authorizing an independent 'complete continuum' psychiatric hospital." (Respondent's Memo, p. 7.) According to the BZA, all that was intended by the 1970 Special Use Permit was to permit limited psychiatric services as an accessory use for the nursing home.

The BZA notes that Limitation No. 3 of the 1970 Special Use Permit required that any change in use, whether or not a use requiring a use permit, would require reevaluation by the BZA.

The BZA concludes that Dominion's proposed RTC is a new use which is in violation of the 1970 Special Use Permit because the property has never

been approved for an RTC. Because Dominion does not have the right to provide any kind of psychiatric service it wants on the property without approval from the Board of Supervisors, the BZA asks that its decision be affirmed.

## Conclusion

This Court must defer to the BZA's decision unless the BZA's decision was plainly wrong and not supported by the record. In this case, the BZA's decision was not plainly wrong and the decision is supported by the record.

When the BZA reversed the Zoning Administrator's decision, Paul Hammack, Vice Chairman of the BZA, stated: "With respect to the RTC use … the RTC use is an expansion, different from existing uses, different from those uses which were approved in 1990 … ." (R. 568.) Mr. Hammack believed that, under Condition No. 8 of the 1990 Special Exception, an RTC would have to be specifically approved for the site. Condition No. 8 of the 1990 Special Exception (SE 90-M-005) states:

> This application shall be contingent upon a recommendation of approval from the Health Care Advisory Board to the Board of Supervisors recommending committed patients, psychiatric day treatment for adolescents … . The Health Care Advisory Board may approve one or any combination of the proposed treatment programs. *If such aproval is not obtained for any specific treatment program, this Special Exception shall be null and void as to that treatment program.*

(R. 98) (emphasis added).

Mr. Hammack opined that the "conditions were put in there for a reason, to avail the neighbors an opportunity to address issues that might be raised if these programs were changed, or expanded in some way … ." (R. 568.) Mr. Hammack concluded that "there is enough evidence in the record that this would require a Special Exception Amendment" and moved that the Zoning Administrator's determination be reversed. (R. 569.) The motion carried unanimously by the seven members of the BZA. (R. 571.)

Having thoroughly reviewed the record, this Court finds some support in the record for the BZA's position that the operation of an RTC on the property would constitute an expanded use from that permitted by the 1990 Special Exception or the 1970 Special Use Permit.

The parties agreed that the 1990 Special Exception does not refer to an RTC. Dominion maintains that the 1990 Special Exception incorporates the 1970 Special Use Permit, which itself permits a general psychiatric facility, provided it consists of no more than 100 beds and other conditions are met. In response, the BZA points to the minutes of the meeting of the BZA in 1970 at which the Special Use Permit was granted. Those minutes reveal that the then-owner of the property assured the BZA that the primary use of the property as a nursing home would be retained. Further, the BZA was told that the "need for the amendment to include specifically the permission to operate a psychiatric unit in this home is occasioned by the licensing and the technical services that are required in many health insurance programs before the benefits [sic] of the program may receive payment for care *in this type of home.*" (R. 20, emphasis added.) It was stated that the psychiatric beds would be used for patients of all ages who have "a need to be relieved from their environments for thirty days but the need was not severe enough to require hospitalization. This facility as proposed would allow a place for a person to go for a couple of weeks," for example, a new mother suffering from transitory post-partum depression. (R. 20.) A citizen at the 1970 hearing expressed concern that the nursing home might fail and the property be sold. She asked whether in that event the property could be converted into a general psychiatric hospital. The chair of the BZA answered that: "Before this could happen, there would have to be a new hearing on it. The ordinance does not allow a mental institution in this zoning category. This is for psychiatric care on a convalescent basis only." (R. 21.)

Similarly, the BZA hearing in 1997 included testimony from members of the Board of Supervisors and the Planning Commission at the time of the 1990 Special Exception. Each testified that the 1990 Special Exception was not intended to approve the use of the property as an RTC. *See, e.g.,* Testimony of Rep. Tom Davis, R. 252-254.

Contrary to the short-term convalescent treatment envisioned in 1970, Dominion's "admissions criteria" for the RTC indicates that the RTC is intended to treat adolescents with "persistence of a disorder and generalized dysfunction after traditional acute and/or outpatient treatment" and pharmacological interventions have proven unsuccessful. (R. 249.) A stay might extend up to one year, although the average stay in an RTC is three months. One citizen, also a practicing psychotherapist, testified at the BZA hearing that:

> As a mental health professional, I can tell you that there is nothing convalescent about an RTC; quite the opposite. The adolescents in

these centers are treatment resistant. Some of the most common diagnoses are oppositional, defiant, and conduct disorders, frequently complicated by substance abuse. These adolescents are very troubled, very difficult patients. They are not convalescent.

Testimony of Marcella Marcy, R. 510.

In sum, there is support in the record for the BZA's position that the proposed RTC is a new and expanded use of the property that requires amendment to the 1990 Special Exception. The BZA decision is not plainly wrong, nor is it arbitrary, capricious, or a clear abuse of discretion.

For the foregoing reasons, the decision of the BZA will be affirmed.