## CIRCUIT COURT OF ARLINGTON COUNTY

Antonio Amurrio

v.

Zoning Appeals Board
of the City of Falls Church

June 6, 2002

Case No. (Chancery) 02-92

BY JUDGE JOANNE F. ALPER

This matter comes before the Court on a Petition for Writ of Certiorari filed by Antonio Amurrio challenging the denial of several variances by the Board of Zoning Appeals of the City of Falls Church ("BZA"). In accordance with Virginia Code § 15.2-2314, the Court has reviewed the memoranda submitted by counsel, the Record of the BZA proceedings, as well as the exhibits submitted by both parties and concluded that no additional testimony is necessary for the proper adjudication of this matter. Additionally, both parties have waived the opportunity to present oral argument before this Court.

### Background

Petitioner is the owner of Lots 118 and 118A located at 304 Douglas Avenue in the City of Falls Church, Virginia. Lot 118 is completely within the City, but Lot 118A straddles the City boundary, with a large portion of the lot falling outside the City, in Fairfax County. The City chose to zone Lot 118 B-3 (General Business). Likewise, the portion of Lot 118A that is in the City is also zoned B-3 (General Business); however, the portion of lot 118A

that is in Fairfax County is zoned R-1 (Residential). See Exhibit A; see also Brief for Respondent Exhibit No. 1.

To the north of lot 118 on Douglas Avenue are lots 119 and 120. Each is within the City, each is zoned B-3 (General Business), and each is currently being put to that use. The only residential property bordering Petitioner's property (other than the portion of Lot 118A located in Fairfax County) is located on Brice Street adjacent to Lot 118. See Exhibit A. This property is also located in Fairfax County. Across the street from Petitioner's lots, are Lots 69, 70, 71, 72, and 73, all located within the City. Lots 69 and 70 are zoned B-1 (Limited Business), while Lots 71, 72, and a portion of Lot 73 are zoned R-1A (Low Density Residential). *Id.*

On Lot 118 there is a non-conforming house that until recently had been used as a residence. Additionally, Fairfax County has denied commercial use of the portion of Lot 118A located there because it is zoned residential and the property is located in the James Lee Conservation Area. Petitioner wishes to operate a carry-out and/or delivery restaurant from the non-conforming residential structure on Lot 118. The proposed use is permitted by the City because restaurants are permitted as a matter of right in B-3 Districts. However, to put Lot 118 to this use, would require eight variances from B-3 zoning requirements. See Brief for Petitioner at 2.

### Proceedings

Petitioner appeared before the BZA on three separate occasions in an attempt to obtain the necessary variances. The first hearing was on June 14, 2001, the second was on July 12, 2001, and the final hearing was on January 17, 2002. On each of the first two scheduled dates, Petitioner requested and was granted postponements so that revisions to the site plan could be prepared. Petitioner's final application to the BZA requested eight variances[1] to the City of Falls Church, which were:

---

[1] As the record reflects, the eight variances requested here would be necessary regardless of what type of business attempted to use Lot 118. *See* Transcript III at 145. As counsel for Petitioner stated at the final hearing, "if you are going to have employees . . . you still have to provide parking places. You still have the requirement [of] a buffer between a commercial area and a residential area and you still have all the . . . landscaping problems and the same problems we have here." *Id.*

1. To permit a vehicular entrance/exit for a parking area to a commercial business to be zero feet from an residential district instead of one hundred feet as required;

2. To permit four parking spaces instead of eleven parking spaces;

3. To permit a standing space in a driveway aisle which is access to off-street parking to be utilized as a loading space, as otherwise not permitted, or to omit a loading space as otherwise not permitted;

4. To permit parking in required yards, as otherwise not permitted;

5. To provide a screening fence instead of providing a twenty foot buffer on a commercial site to screen commercial from residential, or to omit a twenty foot buffer on a commercial site to screen commercial development from residential;

6. To permit perimeter landscaping adjacent to a public street to be three feet wide instead of ten feet wide, as required;

7. To omit interior landscaping for parking spaces, as required; and

8. To permit two-way aisles to be less than twenty-three feet wide, as required.

*See* Transcript III at 131-32.

At the conclusion of the hearing, the BZA denied all of Petitioner's requests for variances. *See* Transcript III at 150-51. Subsequently, with notice to Petitioner's counsel, a formal resolution setting forth findings of fact and reasons for denial of the requested variances was enacted by the BZA pursuant to § 17.20 of the Falls Church City Charter. Thereafter, Petitioner filed this instant appeal of the BZA's ruling and a Writ of Certiorari was issued in accordance with Virginia Code § 15.2-2314.

## Standard of Review

The standard for certiorari review of a BZA decision is well established in Virginia. Review of a BZA decision is not a de novo proceeding. *Packer v. Hornsby*, 221 Va. 117, 120 (1980). Rather, there is a presumption that the Board's decision was correct and the Petitioner must overcome this presumption. *Alleghany Enters., Inc. v. Board of Zoning Appeals*, 217 Va. 64, 67 (1976). This Court's review is limited to determining "whether the board has applied erroneous principles of law or, where the board's discretion is involved, whether the decision is plainly wrong and in violation of the purpose and intent of the zoning ordinance." *Steele v. Fluvanna County Bd. of Zoning Appeals*, 246 Va. 502, 506 (1993) (citing *Masterson v. Board of*

*Zoning Appeals*, 233 Va. 37, 44 (1987)). Accordingly, "the board's decision can be overturned only for arbitrary or capricious conduct constituting a clear abuse of discretion." *Board of Zoning Appeals of Chesapeake v. Glasser Bros. Corp.*, 242 Va. 197, 200 (1991) (quoting *Board of Zoning Appeals v. O'Malley*, 229 Va. 605, 608, 331 S.E.2d 481, 483 (1985)) (internal quotation omitted).

## Discussion

At the outset, we must recognize, as has the Supreme Court, that zoning laws are nonspecific and of a general nature. *Board of Zoning Appeals of the City of Alexandria v. Fowler*, 201 Va. 942, 946 (1960). Because zoning laws are by nature imprecise and far from perfect, creation of zoning boards became a manifest necessity. *Id.* The purpose of these boards is not to enact zoning schemes or grant requests for rezoning of specific parcels. As the Supreme Court has noted, zoning "is purely a legislative function and not within the authority of a board of zoning appeals." *Prince William County Bd. of Zoning Appeals v. Bond*, 225 Va. 177, 180 (1983). Instead, the intended purpose of zoning boards was "to vary specific terms of zoning ordinances to the end that the intent of the zoning law may be effectuated, keeping in mind that that the health, safety, morals, and general welfare of the public is the basis for enactment of such laws." *Id.* (internal citations omitted). Consequently, Boards of Zoning Appeals, when acting in conformity with their intended purpose, allow for "the amelioration of the rigors of necessarily general zoning statues by eliminating the necessity for a slavish adherence to the precise letter of the ordinance where, in a given case, little or no good on the one side and undue hardship on the other would result from literal enforcement." *Fowler*, 201 Va. at 946.

Under Virginia Code § 15.2-2309, the BZA has the authority to grant a variance so long as it is not contrary to the public interest and, when owing to special conditions, a literal enforcement of the provisions will result in unnecessary hardship. However, before the BZA grants a variance it must make the several findings. First, the property must be acquired in good faith. See Va. Code § 15.2-2309(2). Second, the granting of the variance must be found to alleviate an unnecessary hardship, and, third, the variance must be in harmony with the intended spirit and purpose of the ordinance. *Id.* Additionally, the BZA must make three other specific findings before it grants a variance: (1) the strict application of the ordinance would produce undue hardship; (2) the hardship is not shared by other properties in the same zoning district and the same vicinity; and (3) the authorization of the variance

will not be a substantial detriment to adjacent property and that the character of the district will not be changed. *Id.*

### Good Faith Requirement

In order for a variance to be granted, the purchase of the property must have been made in good faith and the need for the variance is not a self-inflicted hardship. *See Alleghany Enters., Inc.*, 217 Va. at 67. In the BZA's formal decision, it stated that:

> The applicant knew or should have known prior to purchasing the lots that, due to the Fairfax County residential zoning of Lot 118A and due to the size limitations of Lot 118, commercial access to the property for the intended commercial use of the existing house and property in the City was not feasible under the City land use ordinances.

Board of Zoning Appeals Resolution at 2.

This finding, alone, is insufficient to determine that the Petitioner did not purchase this property in good faith.[2] The mere fact that Petitioner knew, or should have known, that variances were necessary to put the property to a commercial use is not a breach of "good faith" as contemplated under this statutory scheme. As the Virginia Supreme Court has recognized, to follow this argument to its logical end, "nonconforming property could never be developed by obtaining a variance after the property is sold and, therefore, [Code § 15.2-2309] would be rendered meaningless with regard to such property." *Spence v. Board of Zoning Appeals for the City of Virginia Beach*, 255 Va. 116, 120 (1998). Consequently, whether Petitioner knew or should have known about the need for variances prior to obtaining the property does not constitute a breach of "good faith" and the BZA's finding to the contrary is "plainly wrong" as a matter of law and therefore an abuse of discretion.

Likewise, Petitioner's need for variances is not a self-inflicted hardship. The Supreme Court has repeatedly held that a property owner who violates a zoning ordinance and then seeks relief from that ordinance has created a self-inflicted hardship. *See generally Steele v. Fluvanna County Board of Zoning*

---

[2] After thoroughly reviewing both the formal written decision, as well as the record of the proceedings, it remains unclear the precise basis for the BZA's decision in this matter. The formal decision fails to even cite to the relevant Virginia Code sections, let alone make specific findings in accordance with the relevant statutory factors found in § 15.2-2309(2).

*Appeals*, 246 Va. 502 (1993) (finding that the construction of a house in violation of side yard setback requirements, although done inadvertently, was a self-inflicted hardship); *Alleghany Enters., Inc. v. Board of Zoning Appeals*, 217 Va. 64 (1976) (finding that an owner that converted land zoned for residential use into a commercial property violated the zoning ordinance and therefore created a self-inflicted hardship); *Board of Zoning Appeals v. Combs*, 200 Va. 471 (1959) (reinstating a board of zoning appeals' decision to deny of variance to a property owner who had constructed an apartment over an existing garage in violation of a zoning ordinance because it was a self-inflicted hardship). Based upon these precedents, Petitioner's case does not present a self-inflicted hardship. Petitioner has not violated any zoning ordinance; rather, Petitioner has sought redress through the appropriate appeals process in his attempt to obtain the necessary variances.

### Unnecessary Hardship

Under the Virginia Code, the BZA is authorized to grant a variance where "owing to special conditions a literal enforcement of the provisions will result in unnecessary hardship." Va. Code § 15.2-2309(2). The Code section then goes on to define the "special conditions" that rise to the level of "unnecessary hardship." These special conditions are: (1) exceptional narrowness, shallowness, size, or shape of the property at the time of the effective date of the ordinance; (2) the ordinance effectively prohibits or unreasonably restricts the utilization of the property; or (3) the granting of the variance will alleviate a clearly demonstrable hardship approaching confiscation, as opposed to special privilege or convenience. *Id.* Additionally, because these conditions are stated in the disjunctive, Petitioner is required only to establish one of the several situations, which would create this unnecessary hardship. *Tidewater Util. Corp. v. City of Norfolk*, 208 Va. 705, 711 (1968); *see also Natrella v. Board of Zoning Appeals of Arlington County*, 231 Va. 451, 457 (1986) (recognizing that "proof of an unreasonable restriction can, standing alone, establish unnecessary hardship") (citing *Board of Zoning Appeals v. Fowler*, 201 Va. 942 (1960)). Here, Petitioner is able to establish that the denial of the variance unreasonably restricts the utilization of the property and therefore meets the unnecessary hardship requirement.[3]

---

[3] Petitioner likely meets the two other tests for unnecessary hardship, exceptional narrowness of the property and hardship approaching confiscation, as well. However, because Petitioner most easily meets the unreasonable restriction requirement and because the unnecessary hardship formulation is set forth in the disjunctive, discussion of these issues is unnecessary.

The application of the strict terms of this ordinance unreasonably restricts the utilization of Petitioner's property. The zoning ordinance in question has classified Petitioner's property as B-3 or "General Business." Under this designation, as the BZA admittedly concedes, Petitioner may operate a restaurant as a matter of right. *See* Brief for Respondents at 2. However, the BZA counters the "[d]enial of the requested variances would not deprive the owner of a reasonable and continual use of the property as a residence." Board of Zoning Appeals Resolution at 2. The Court finds the BZA's rationale plainly wrong.

Under the BZA's approach, as long as the property can be put to "some" productive use, the statutory standard will always be satisfied. However, the BZA's interpretation turns the statutory standard on its head. To replace "unreasonable restriction" with "reasonable and continual use" is to eviscerate the statutory scheme and deprive Petitioner of his legislatively sanctioned use without adequate justification. More directly, the question posed under the statute, and therefore the question this Court must resolve, is not whether continued use of Lot 118 as a house is reasonable. Instead, the question, appropriately framed, is whether failing to grant the variance is an unreasonable restriction of Petitioner's utilization of Lot 118. The answer to this question is undoubtedly yes.

First, the BZA failed to consider the financial ramifications of its refusal. Although financial loss, alone, is insufficient to establish an unnecessary hardship, "it is a factor or an element to be taken into consideration and should not be ignored." *Natrella*, 231 Va. at 458 (quoting *Azalea Corp.*, 201 Va. at 641). In *Natrella*, the property owner in question was attempting to transform his rental property into a condominium, for which several variances were necessary. 231 Va. at 452. In affirming the lower court's consideration of the difference in property value at stake, the Supreme Court stated that "[w]e are of the opinion that . . . evidence of relative property value is . . . relevant to the issue of unreasonable restriction on the use of property." *Id.* at 459; *see also Azalea Corp.*, 201 Va. at 641 (reversing the circuit court for failing to consider economic impact of denial of variances). In the present case, there is an unmistakable financial difference between commercial use and residential use. Therefore, the BZA should have taken into consideration the financial impact its decision would have. They did not. However, because financial impact, standing alone, is not sufficient cause to overturn the BZA, we must delve deeper into the BZA's decision to find the precise basis for refusing the variances.

In its written decision, the BZA contended that "[t]he food delivery business is considered a high-intensity use because of automobile delivery

trips that would increase congestion in the neighborhood." Board of Zoning Appeals Resolution at 2. Further, the BZA stated that "the property is located in the James Lee Conservation District . . . [created] . . . to protect the adjacent residential neighborhood from such high intensity traffic generating businesses." *Id.* The BZA's efforts to protect residential neighborhoods from "high-intensity" traffic are a laudable endeavor. Nevertheless, it is an insufficient justification, here, to deny the requested variances. Again, Lot 118 is zoned B-3 and permits the Petitioner to open a restaurant on this property. Consequently, the legislative determination has already been made. The BZA is not authorized to make zoning determinations. Yet, the decision to deny these variances can be seen as nothing else. The BZA denial, in effect, makes the determination that the property is better suited for a residential, albeit non-conforming use, than its legislatively sanctioned commercial use. In an effort to achieve this end, the BZA chose to deny the requested variances. This is wholly improper and beyond the authority of the BZA. *See* Va. Code § 15.2-2309(5) (stating that "no provision of this section shall be construed as granting any board the power to rezone property"). Even assuming that the intended commercial use would increase traffic cannot save this decision from being overturned. The fact that a commercial use would increase traffic in relation to a residential use is a zoning question not before the BZA. Accordingly, the denial of the variances resulted in an unreasonable restriction of Petitioner's use of Lot 118, and therefore Petitioner has met the unnecessary hardship threshold. Additionally, the proposed variances are in harmony with the intended spirit and purpose of the ordinance. The district is zoned for commercial use and allowing Petitioner to use his property in this fashion would in no way disrupt the City's comprehensive zoning scheme. The BZA has not offered any argument to the contrary.

Once this threshold is met, as it is here, the Court must look to see whether Petitioner meets three specific requirements: (1) that the strict application of the ordinance would produce an undue hardship; (2) that the hardship is not shared generally by other properties in the same zoning district and the same vicinity; and (3) that the authorization of the variance will not be a substantial detriment to adjacent property and the character of the district will not be changed. Because these requirements are stated in the conjunctive, the Court must address each.

### Undue Hardship

The Court is of the opinion that failing to grant these variances is an undue hardship. The BZA states that the denial of the variances will not

produce an undue hardship.[4] However, as discussed earlier, the BZA failed to take into account the financial ramifications of its decision. *Natrella*, 231 Va. at 458. Moreover, not only is Lot 118 zoned for commercial use, but the substantial majority of the surrounding properties are similarly zoned and currently being used in that capacity. *See* Board of Zoning Appeals Resolution at 2 (recognizing that Lots 3, 119, 120, 121, 122, and 123 are all commercially developed). To deny Petitioner the ability to put his property to commercial use, while at the same time allowing similarly situated adjacent property to operate commercially, coupled with the financial implications of that decision, rises to the level of undue hardship in this case.

### Hardship Not Generally Shared

Additionally, this undue hardship is not shared generally by other properties in the zoning district or same vicinity. As the record reflects, Petitioner's property is the only lot zoned B-3 that is not commercially developed. See Brief for Petitioner at 11. Further, it is the unique shape and size of this land that mandates the variance requests. The record is devoid of reference to any surrounding property suffering the same fate as Petitioner. Consequently, this undue hardship is not shared generally.

### Impact on Adjacent Properties

Lastly, granting Petitioner the requested variances, and thus allowing Lot 118 to be commercially developed, will neither be a substantial detriment to adjacent properties nor change the character of the zoning district. First, this area is zoned B-3, so allowing commercial use places Petitioner in line with the zoning scheme and would not change the character of this commercially zoned district of Falls Church. Second, the BZA has produced no evidence that suggests that granting the variances will adversely affect adjacent properties. The only argument the BZA offers at all is the increased congestion rationale. However, as before, this argument falls far short. The only property bordering Lot 118 that is zoned residential is located in Fairfax County. All other properties are either zoned B-1 or B-3. The Court fails to see how increasing traffic flow negatively impacts commercial properties bordering Petitioner. Moreover, even if BZA could muster such an argument, it could not, as a matter of law, rise to the level of "substantial detriment" in the present case.

---

[4] Again, the BZA fails to support its conclusions with either specific factual findings relevant to this determination or citations to the Virginia Code.

## Conclusion

Under Virginia law, boards of zoning appeals are granted wide latitude in granting or denying requested variances. However, as wide as this latitude is, the Virginia Code mandates judicial review of board of zoning appeal decisions for a reason. Judicial review is necessary because no administrative body is granted limitless discretion. This includes the Board of Zoning Appeals for Falls Church. Its decision must be supportable. As the Virginia Supreme Court recognized over forty years ago, "the board is clothed with discretionary power, but this power must be exercised intelligently, fairly, within the domain of reason, and not arbitrarily." *Azalea Corp. v. City of Richmond*, 201 Va. 636, 641 (1960) (citations omitted). Held up against this standard, the BZA's decision cannot be affirmed. The Petitioner obtained the property in good faith and the need for a variance was not a self-inflicted hardship. Additionally, the failure to grant the variance resulted in an unreasonable restriction on the utilization of the property resulting in an unnecessary hardship. Likewise, the denial produced an undue hardship that was not shared generally by the surrounding properties. Finally, the granting of the variance will not be a substantial detriment to adjacent properties and will not change the character of the district. Accordingly, the Petitioner, under the standard set forth in Virginia Code § 15.2-2309(2) should have been granted the requested variances, and the BZA's decision to the contrary was plainly wrong.

Therefore, in accordance with Virginia Code §§ 15.2-2314 and 15.2-2309, the decision of the BZA is reversed and the BZA is hereby ordered to grant Petitioner's requested variances.